STATE v. GRACE WYNNE, SARAH HURST and BEN HURST, Appellants.— No. 40111.—204 S. W. (2d) 927.

Division One, October 13, 1947.

*Harry L. Jacobs* for appellants.

1098

,*J. E. Taylor,* Attorney General, and *Arvid Owsley,* Assistant At-
torney General, "for respondent.

CLARK, J.—Appeal by the sureties from a final judgment
of the circuit court of Jackson County forfeiting a recognizance in

the sum of $15,000.00 to secure the presence of Grace Wynne for trial on a criminal charge in that court. Grace Wynne was not served with process in this forfeiture proceeding.

In September, 1940, Grace Wynne was indicted for first degree murder for the killing of Grace Thompson in September, 1934. On November 26, 1934, Mrs. Wynne was adjudged insane and placed under guardianship by the probate court of Jackson County. For a time she was in an asylum, but left and, after going to various places in Oklahoma and Texas, established her residence in New Orleans and operated a flower shop there. In July, 1940, a hearing was had in the probate court of Jackson County resulting in a judgment that she was restored to sanity. This judgment was appealed by her attorney to the circuit court, but was never tried and the appeal was dismissed on September 4, 1945. In September, 1942, she was convicted of murder in the second degree and sentenced to fifteen years in the penitentiary. She appealed to this court and, with Ben Hurst and Sarah Hurst as sureties, entered into the recognizance now in suit conditioned for her appearance in this court or in the circuit court on retrial or when ordered. We reversed and remanded the case. [State v. Wynne, 353 Mo. 276, 182 S. W. (2d) 294.]

The case was called for retrial in the circuit court on October 16, 1944; Mrs. Wynne failed to appear, the court entered an interlocutory judgment forfeiting the recognizance and ordered a writ of scire facias served on the sureties. The governor of Missouri issued extradition papers for the return of Mrs. Wynne. These papers were taken to Louisiana by an assistant prosecuting attorney of Jackson county and an assistant attorney general of Missouri. The papers were approved as to form by the attorney general of Louisana. They were presented to the governor of that state. Mrs. Wynne contested the proceedings and the governor refused to grant extradition. Application was made to the Federal district attorney at Kansas City. He procured an indictment of Mrs. Wynne by a Federal grand jury under the Fugitive Felon Law, [18 U. S. C. A.] and tried to get the co-operation of the Federal district attorney at New Orleans in returning Mrs. Wynne. This was refused. The attorney general of the United States was asked by the district attorney at Kansas City to order the district attorney at New Orleans to lend his aid. Both these district attorneys made trips to Washington to confer with the attorney general. After much negotiation that official ordered the dismissal of the Federal charge at Kansas City. There was evidence that the State and Federal officials in Louisiana refused aid because they believed that the motive for bringing Mrs. Wynne back to Missouri was to relieve the sureties from liability on the recognizance. The State and Federal officials in Missouri disclaim such motive.

■ While it is not and could not be shown in the record, appellants ask us to judicially note the application and accompanying exhibits filed with the governor, after the appeal herein, asking for remission of penalty under our statute, Section 4189. [References to statutes, unless otherwise stated, are to Missouri Revised Statutes, 1939, and corresponding sections of Mo. R. S. A.] Courts sometimes take judicial notice of acts, practices and proceedings in other branches of the government [31 C. J. S., p. 602, sec. 40] and, in the absence of any objection, we will do so in this case.

The main points stressed by appellants on this appeal are: (1) that the refusal of the governor of Louisiana to grant extradition exonerates the sureties; (2) that the refusal of the circuit court to remit the penalty was an abuse of discretion or a failure to exercise discretion; (3) as Mrs. Wynne had been adjudged insane, the recognizance is void.

Many cases are cited, but appellants concede that none of them is precisely in point. It will be necessary to refer to only a few of them which announce general rules governing bonds and recognizances for bail.

■ We are not impressed with appellants' claim that the recognizance is void because Mrs. Wynne had been adjudged insane. The judgment of restoration was rendered two years before the recognizance was entered into and although that judgment was appealed, as the appeal was dismissed the judgment spoke from the date of its rendition. Appellants offered no evidence that Mrs. Wynne was actually insane at the date of the recognizance.

■ Nor can we sustain the contention of appellants that the refusal of the Louisiana governor to grant extradition exonerates them as a matter of law and of right.

The courts generally hold that the sureties are discharged as a matter of law when the return of the defendant is prevented by (1) an act of God; (2) an act of the law; (3) an act of the obligee, the state where the criminal charge is pending. [Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287; same case 36 Conn. 242; 8 C. J. S., p. 147, sec. 76.] An illustration of the first would be the death of the accused; of the second, abolishment of the court in which accused is obligated to appear; of the third, granting extradition by the governor of the obligee state to send the accused to answer a charge in another state.

Appellants do not contend that they were prevented from returning Mrs. Wynne to the Jackson county circuit court by an act ■ of God or by an act of the obligee. It is conceded by both sides that the appellants, the Federal officials in Missouri and the officials of Missouri did all things which the laws of the United States and of Missouri authorized them to do in their efforts to bring the accused back for trial. [Right here it may not be out of place to compliment attorneys

on both sides for the candid and able manner in which they have briefed and argued this case.]

Appellants do contend that they were prevented from procuring the return of Mrs. Wynne by an act of the law, to wit, the arbitrary refusal by the Federal and State officials in Louisiana to aid in such return. The courts have generally held that an act of the law which will relieve the securities, as a matter of right, must be an act of a law operative in the state where the obligation was assumed, and obligatory in its effect upon her authorities. [8 C. J. S., p. 147, sec. 76; Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287; Cain v. State, 55 Ala. 170.] No law of Missouri hampered appellants. But they say that the Constitution of the United States, Article IV, Section 2, clause 2, and the law enacted in pursuance thereof, 18 U. S. C. A. 284; section 662 [set out in 12 Mo. R. S. A. 276-7] the supreme law, have obliterated state lines as to extradition proceedings and make it the mandatory duty of the executive of one state to honor the demand of the executive of another state for the extradition of a person charged with crime. Appellants further say that these laws should be considered as having been in contemplation when they entered into their recognizance and, therefore, a part of their obligation upon which they had the right to place complete reliance. We cannot go that far. The wording of the cited provisions of the constitution and law of the United States seems to place a mandatory duty upon a governor to honor a request for extradition, proper in form, but, because of our dual system of Federal and State government, there is no legal means to compel a governor to comply with the Federal law. "In their internal relations the states of the Union are foreign to each other, and the act of one cannot operate to defeat an obligation incurred to another." [8 C. J. S., p. 149, sec. 77.]

The law does place a duty on the governor of the asylum state. It is a legal duty, not merely a moral duty or one resting on comity, as argued by respondent, but it is not an absolute duty to grant extradition under all circumstances.

Notwithstanding the mandatory wording of the Federal Law, there might be a variety of circumstances which would justify a governor in refusing extradition. The record now before us does not show such a circumstance, but even if it be true that the officials in Louisiana arbitrarily refused to act, yet that does not constitute an act of the law which necessarily excuses the sureties; rather it is a successful effort of the principal in the recognizance to evade the law or the unauthorized acts of strangers to the obligation. While there is an implied covenant on the part of the obligee state that it will, through its officers, render reasonable assistance in returning the fugitive, [Miller v. Commonwealth, 192 Ky. 709, 234 S. W. 307] there is no such implied covenant that another state will render such assistance.

Upon her admittance to bail the custody of Mrs. Wynne was transferred to her sureties, the appellants. [6 Am. Jur., p. 85, sec. 93.] They had the right to prevent her from leaving the state, to arrest her within the state without warrant. Yet they must have known that she might return to her residence and business in New Orleans. We cannot hold that they were entitled to assume, as an absolute right, that Mrs. Wynne would not resist extradition or that efforts to extradite her would be successful.

However, the facts related above are relevant for a consideration by the circuit court, if that court has jurisdiction to exercise discretion in the matter, and that brings us to the crucial question in the case.

As previously stated the appellants made application to the governor for remission of the penalty under Section 4189. As required by that statute, the circuit judge made a written statement in which he said:

"5. I did not feel that the efforts of the Sureties or the other facts in evidence were germane to the proceedings in the Circuit Court or that I had the power under the existing statutes, and particularly Section 3973, R. S. Mo. 1939, to discharge the Sureties, in whole or in part, or to set aside the forfeiture or to make any remitter, because it was my view that any such action on my part could only be taken if the defendant appeared or was produced. While I felt that perhaps the facts presented to me by the Sureties at the hearing on the scire facias might in a proper forum entitle them to consideration, yet, under my view, an application for remission was not within my jurisdiction, and I felt that said facts were, therefore, not to be considered by me in that connection. It was my view that any application for remission should be addressed to the Governor of the State of Missouri for such action, if any, as he might deem appropriate under Section 4189 R. S. Mo. 1939 governing remission proceedings."

In his brief in this court the attorney general also takes the position that the circuit court is entirely without discretion to remit the penalty in whole or part because the accused was not produced in court before final judgment of forfeiture.

This case does not involve an abuse of discretion by the circuit court, but a refusal to exercise discretion because the court believed it lacked jurisdiction to do so. If the court was wrong in that belief the case must be remanded. [State v. Damon, 350 Mo. 949, 169 S. W. (2d) 382.]

Courts of other states, under their statutes, have upheld the power of trial courts to grant relief to sureties who have exercised diligence to produce an accused and have failed because of circumstances beyond their control. [Cain v. State, 55 Ala. 170; Commonwealth v. Dana, 14 Mass. 665; State v. Reed, 127 Wash. 166, 219 Pac. 833.] In State v. Reed a defendant under a criminal charge in Washington

was arrested in California on a criminal charge. The securities on her bail bond in Washington attempted to procure her extradition. The California authorities refused extradition, prosecuted defendant and sentenced her to a term in the penitentiary. The Washington trial court granted the sureties, upon payment of costs, a stay of forfeiture proceedings until defendant could complete her sentence in California. On appeal the supreme court affirmed the ruling over the State's contention that the trial court lacked discretion to grant the stay because the defendant had not been produced in court. The facts in the instant case seem to furnish stronger reason for the exercise of the court's discretion than that present in State v. Reed.

No Missouri case has been cited, and we have found none, which decides the precise question now before us. Its decision must depend upon a construction of our statutes in the light of recognized purposes of bail in criminal cases.

The principal case cited by respondent is State v. Taylor, 136 Mo. 462, 37 S. W. 1121. There defendants failed to appear in accordance with their recognizance in a criminal case. Scire facias was issued against the sureties, but before final judgment the sheriff arrested the fugitives on the same charge and brought them into court. The circuit court released the sureties on payment of the costs and this court affirmed, overruling the contention of the State that the circuit court lacked discretion to remit because the appearance of defendants was due to the efforts of the sheriff and not that of the sureties. The opinion holds that the statute, now Section 3973, vests the court with discretion if the defendant is brought into court, by any means, before final judgment on the recognizance. We do not think the opinion should be construed to hold, as the respondent in the instant case now contends, that appearance of the defendant before final judgment is a prime requisite to the exercise of the court's discretion under all circumstances. The opinion refers to another statute, now Section 3970, which entitles the bailor to remission of the penalty, upon payment of costs, as a matter of right and not of grace, if he brings in the accused before final judgment on the recognizance.

The Federal government and every state permit, even encourage, persons charged with crime, except certain crimes, to give bail. Among reasons for this are: that the state may be relieved of the burden ▮▮▮▮ of keeping the accused, and that the innocent shall not be confined pending trial. As an alternative for confinement, the State transfers custody of the accused to bailors who are obligated, under peril of financial loss, to keep a watch over the accused and, in case of flight, to aid in his recapture. But the primary purpose of bail is not to increase the revenue of the state or to punish the bailor.

'Missouri statutes provide as follows: Section 3970, 'the bailor at any time before final judgment on the recognizance, may surrender

his principal to the court or to the sheriff and be discharged from further liability upon payment of the costs. Section 3973, if the defendant makes default, "the court must direct the fact to be entered upon its minutes, and thereupon the recognizance is forfeited, and the same shall be proceeded upon by scire facias to final judgment and execution thereon, although the defendant may be afterward arrested on the original charge, unless remitted by the court for cause shown." Section 4189 vests the governor with power to remit the penalty of any recognizance "when it shall be made to appear to him that there is by such fine or forfeiture an injustice done, or great hardship suffered by the defendant or defendants, which equity and good conscience would seem to entitle such defendant or defendants to be relieved from. . . ."

We think that the last clause in Section 3973, "unless remitted by the court for cause shown," relates to the whole section and vests the court with discretion to remit the penalty for cause at any time before final judgment on the recognizance. It clearly means that such discretion may be exercised without the production of the accused, but that the arrest of the accused by peace officers after forfeiture and before final judgment will not entitle the sureties to relief as a matter of right; good cause must still be shown.

Of course, such discretion is a judicial one and subject to review if arbitrarily and unreasonably exercised either for or against the sureties. Section 4189 vests the governor with power, on ex parte hearing, to grant remitter even though the defendant is never produced and even after final judgment on the recognizance. It is not unreasonable to hold that by Section 3973 the general assembly intended to vest some discretion in the trial court while the matter is pending before it.

Reading the three sections together, we come to these conclusions: under Section 3970 if the accused voluntarily surrender or is produced by the bailor before final judgment on the recognizance, the bailor, as of right, must be released on payment of the costs; under Section 3973, even though the accused is not produced, or is produced by peace officers and not by the bailor, the court may for cause remit the penalty upon payment of the costs; under Section 4189 the governor may remit with or without the production of the accused and before or after final judgment on the recognizance.

As the trial court erred in ruling that it lacked jurisdiction to pass upon the merits of appellants' application for relief, the judgment is reversed and the cause remanded. *Douglas, P. J.,* concurs; *Conkling, J.,* concurs in separate opinion; *Hyde, J.,* dissents in separate opinion.

CONKLING, J. (concurring).—I agree with the reasoning and with the conclusions reached in the principal opinion.

■ Whether in the penal amount of one dollar or one million, bail can have only one purpose. Such purpose must be to compel the appearance of an accused for trial, to the end that justice may be administered. The principal obligation of a recognizance is that accused appear at the place and time therein set out. While sureties in a recognizance are under the same duty as the officer who would otherwise imprison an accused, the purpose of bail is not to enrich the state nor to penalize sureties. Its object can only be to insure appearance for trial. None other.

■ On this appeal it stands conceded by all that the appellants, the Missouri officials and the Federal officials in Missouri did all things they could have legally done to secure the appearance in the Missouri court of the principal named in the recognizance. Nothing to that end was left undone.

■ While it is not my view that the omission or refusal to act on the part of the officials of an asylum state relieves the sureties upon a recognizance as a matter of course (and I do not read the principal opinion as so ruling), I am in accord with the ruling in the principal opinion that Section 3973 of the Statute does vest the trial court with a judicial discretion which he may exercise, even where the accused is not produced in court. That the statute does give the trial court such a discretion is affirmatively ruled in the principal opinion. I see no other question in this case.

Assume, as it is argued, that it has been long established and well settled by the case made law upon the subject, that sureties are to be excused only where the appearance for trial of the principal named in a recognizance is prevented by (1) act of God, (2) act of law, (3) act of obligee, or (4) act of a public enemy. It seems to me that our statute is much broader than the case made law because it uses the words "for cause shown". Our statute does not set out nor does it limit the excusing of the surety to the four instances above.

In what sense was "for cause shown" intended to be understood? Does it vest a discretion? To what extent may judicial discretion operate, what are its limitations, and does it comprehend granting any relief on grounds of justice and right? The answer to these questions resolves the only issue which I see upon this appeal.

In this character of statute the words "for cause shown" must have a definite significance. The statute deals with circumstances and sets out the procedure under which a recognizance may be forfeited and collected, and provides for remission of the penalty "for cause shown". Providing for remission "for cause shown", those last quoted words mean something. In my view they are intended to include circumstances under which the trial court may make a contrary finding, and, in whole or in part, excuse the surety from the penal obligation of the bond. But the statute, by failing to set out the facts or circumstances which may excuse the surety plainly vests

the court with discretion to determine what facts and what circumstances shall excuse sureties on the penal obligation of the bond. The statute provides for judgment, for execution and collection of the penal amount of the bond, "unless remitted by the court for cause shown". What shall constitute "cause" for remission is left to the trial court's judicial discretion. An abuse thereof is reviewable on appeal.

In the first twenty-nine words the statute sets out the circumstances under which the court "must" proceed. The court "must" direct a certain entry "upon its minutes". Thereupon, as a matter of law "the recognizance is forfeited". The order forfeiting the bond is interlocutory only. The court was then required to issue a scire facias "to determine whether or not said interlocutory order should be made absolute". State v. Wynne et al., 181 S. W. (2d) 781. It is upon the hearing to make the interlocutory order absolute that cause may be shown.

Legal writers have variously defined "judicial discretion". It is commonly used in the sense defined in 1 Bouv. Law Dict., Rawles Third Rev., page 884, as "The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court". "It does not mean a wild self-willfulness." Faber v. Bruner, 13 Mo. 541, 543. "In the trial of a case questions at times arise to which no strict rule of law is applicable, but which from their nature and surrounding circumstances require the judgment of the court. These questions are to be determined by the court exercising its judicial discretion to further the ends of justice. Stated in general terms, 'judicial discretion' means sound discretion, exercised not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law." Strzebinska v. Jary (R. I.), 193 A. 747, 748, 749. "By judicial discretion is meant sound discretion guided by law. It does not mean an arbitrary discretion. 9 Am. & Eng. Ency. of Law (2d Ed.) 473; 14 Cyc. 384. 'Judicial power is never exercised for the purpose of giving effect to the will of the judge—always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law.' Osborn v. United States Bank, 22 U. S. (9 Wheat.) 738, 6 L. Ed. 204. Deciding what is just and proper under the circumstances of a case is such judicial discretion. In all cases courts must exercise a discretion, in the sense of being discreet, prudent, and exercising cautious judgment. Murray v. Buell, 74 Wis. 14, 41 N. W. 1010; Abbott v. L'Hommedieu, 10 W. Va. 677. A judicial discretion, in practice, is 'the equitable decision of what is just and proper under the circumstances.'" People v. Pfanschmidt (Ill.), 104 N. E. 804, 816. Judicial discretion can never be an arbitrary, vague or

fanciful thing controlled by mere caprice or by the humor of the moment. It is a discretion to do in any case what the ends of justice demand; it is the liberty to act as a judge should act.

It is my view that the statute in question vests the trial court with jurisdiction and that within legal limitations that court has judicial discretion to hear and consider any proper proof adduced upon a hearing to make absolute the interlocutory order for forfeiture of the recognizance. I concur in the remand to the Circuit Court.

■ HYDE, J. (dissenting).—I do not think this case should be reversed and remanded because I do not believe that any different result could be reached under the facts claimed to be true by defendants. Their situation has been caused by the voluntary acts of their principal in leaving this state and refusing to return. It was the obligation of their bond that this would not occur.

It is well settled that if the principal goes to another jurisdiction and is there imprisoned for violation of its laws, the sureties are not discharged. [6 Am. Jur. 103, Sec. 140; 8 C. J. S. 149, Sec. 77; Annotation 26 A. L. R. 412; State v. Horn, 70 Mo. 466; State v. Adank, (Mo. Sup.), 256 S. W. 768.] If the positive act of another state, which prevents the return of the principal, will not relieve the sureties, then surely there can be no basis for holding that any omission or refusal to act by another state, or its officers, could exonerate them, when their principal is free to return but of her own desire refuses to do so.

In the Washington case cited, State v. Reed, 219 Pac. 833, California prevented the principal involved therein from returning to Washington, by holding her to complete a sentence. The Washington Court stayed forfeiture proceedings until the completion of her sentence. I do not think that ruling is any authority for reversal of the judgment of forfeiture in this case. Here Louisiana is not *preventing* the return of the principal. Defendants' complaint is that Louisiana has not done what their bond required them to do, namely, to obtain for them her presence at the trial. Defendants cannot induce their principal to return, although she is free to do so, and want relief from their obligation because another state will not compel her to do what they, by their bond, guaranteed she would do. My view is that this shows no cause at all for any court to relieve them.

I think that the provision in Section 3973, R. S. 1939 for remission "for cause shown" means such cause as has long been established by the cases to be an excuse for the sureties. These are "if they are prevented by an act of God, by an act of the law, by an act of the obligee, or by an act of the public enemy, from fulfilling the requirements of the bond." [6 Am. Jur. 98, Sec. 129; See also 8 C. J. S. 147, Sec. 76.] I do not think that Section 3973 can reasonably be construed to add any other grounds to these long established and well settled grounds. This must be true in view of

Section 4189, R. S. 1939 which authorizes remitter by the Governor when it is shown to him that "there is by such . . . . forfeiture an injustice done, or great hardship suffered by the defendant or defendants, which equity and good conscience would seem to entitle such defendant or defendants to be relieved from." Authority to grant relief to sureties, on bonds made to this state, on these equitable grounds has not been given to the courts by our Legislature. Since the facts on which defendants rely do not afford any basis for any of the recognized and established legal causes for relief of sureties, I think the judgment should be affirmed.