STATE of Missouri, Respondent,

v.

Edward GRAY a/k/a Lawrence Edward Graves, Defendant,

and

C & M Bail Bonds, Surety-Appellant.

No. WD 33849.

Missouri Court of Appeals, Western District.

Sept. 6, 1983.

Application to Transfer Denied Dec. 20, 1983.

Thomas Cox (argued by Marilyn Gussman), Kansas City, for surety-appellant.

Thomas F. Jones (argued), Columbia, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

C & M Bail Bonds (hereinafter surety), appeals from a judgment denying its motion to vacate an order of bond forfeiture. It primarily contends that it is entitled to a discharge as a matter of right because defendant was prevented from appearing by an act of the obligee, the State of Missouri. We affirm.

On May 19, 1981, the defendant, Edward Gray a/k/a Lawrence Edward Graves, was charged in Boone County, Missouri, with committing forgery. On July 31, 1981, the defendant and the surety entered into a surety appearance bond for the sum of $20,-000. Defendant's trial date was set for February 24, 1982, at 9:00 a.m.

Before that date, on September 25, 1981, the defendant was arrested and jailed in Bourbon County, Kansas, on a felony charge. He has remained in the custody of Kansas officials since that time except on three occasions when he appeared in Boone County, Missouri, for proceedings in his forgery case. On each of these occasions, the state requested and received a writ of habeas corpus ad prosequendum ordering the sheriff of Boone County to bring the defendant from the Kansas-Missouri state line, and the defendant waived extradition.

On February 22, 1982, the Kansas court sentenced the defendant to a term of imprisonment. That same day, the state of Missouri again requested and received a writ of habeas corpus ad prosequendum to produce the defendant for trial in Boone County on February 24.

On February 23, 1982, Mr. Cody Ice, employee and agent of the surety, traveled to the jail in Fort Scott, Kansas, and talked with the defendant concerning waiving extradition and returning for trial the next day. The defendant refused. Mr. Ice then informed the Boone County sheriff's office that the defendant would not be present at the Kansas-Missouri state line and that the sheriff need not make a futile trip to that location.

On February 24, 1982, the defendant failed to appear in the circuit court of Boone County, and the court ordered the bond forfeited.

The state filed a motion for judgment on the bond against the surety. The surety subsequently filed its motion to set aside the bond forfeiture. On April 26, 1982, the trial court heard both motions.

On May 20, 1982, the trial court overruled the surety's motion to vacate the order of forfeiture and ordered that judgment in the sum of $20,000 be entered in the state's favor. In a memorandum which accompanies the order, the court found that the defendant's failure to appear for trial was not the result of inaction by the state.

On appeal the surety now argues that it is entitled to a discharge: (1) because the defendant was prevented from appearing by an act of the obligee, the State of Missouri; and (2) because the defendant was prevented from appearing by the trial court's unjust application of the law.

A surety has a duty to produce the defendant-principal for trial unless there are circumstances the law recognizes as excusatory. *State v. Daigle,* 442 S.W.2d 503, 505 (Mo.1969). A surety is discharged as a matter of law only when the principal is prevented from making his bonded appearance by an act of God, an act of the law or

an act of the obligee, the state. *State v. Jones,* 491 S.W.2d 241, 243 (Mo.1973); *State v. Savage,* 461 S.W.2d 887, 889 (Mo.1971) (en banc); *State v. Canania,* 537 S.W.2d 203, 205 (Mo.App.1976). Moreover, the surety has the burden to prove justification or excuse for failing to produce the principal. *State v. Savage, supra* 461 S.W.2d at 889; *State v. Mercer,* 584 S.W.2d 172, 174 (Mo.App.1979); *State v. Tennyson,* 537 S.W.2d 858, 859 (Mo.App.1976).

In its first point, the surety attempts to come within the "act of the obligee" grounds for discharge of its obligation by arguing that two acts (or failures to act) by the state prevented the defendant's appearance. First, the surety finds fault with the sheriff's failure to execute the writ of habeas corpus ad prosequendum. Second, it alleges that the Boone County prosecutor's sudden withdrawal of a plea bargaining agreement greatly influenced the defendant's decision not to waive extradition. We cannot agree that either of these acts entitle the surety to discharge.

■ First, the sheriff's failure to execute the writ cannot be said to have prevented defendant's appearance. He made no attempt to do so only because he had been informed by the surety's agent that traveling to the state line would be futile. The law does not require the doing of a useless act solely for the purpose of complying with a technical requirement. *State v. Barnett,* 628 S.W.2d 917, 920 (Mo.App.1982).

This case is easily distinguishable from *State v. Foster,* 512 S.W.2d 448 (Mo.App. 1974), in which the bondsman found the defendant imprisoned in another jurisdiction, requested that a detainer from the sheriff be placed against defendant, had the defendant requested a disposition of charges against him, and offered to pay all costs. The "only step remaining" was to have someone take custody of the defendant. Because the state failed to take that "only step," forfeiture of bond was held to be inappropriate. Here, however, that remaining step was not all that was required. Defendant's presence at the state line was necessary as well. Drawing an analogy

from the old "but for" test in negligence, we cannot say that "but for" the sheriff's inaction, defendant would have appeared.

■ Second, the prosecutor's alleged withdrawal of a plea bargain agreement cannot be said to have prevented defendant's appearance. The record is devoid of any evidence that a plea bargain agreement actually existed. The only reference to the agreement was made by Mr. Ice as follows:

COUNSEL: Okay. Did he tell you why he eventually refused to return?

MR. ICE: As I understood him, he was under the impression that a plea bargain had been arranged and apparently had been withdrawn.

No effort was made to substantiate the defendant's "impression" other than an offer of proof by surety's counsel in which he stated that defendant was under the impression that the prosecutor had withdrawn an offer to credit him with time served in Kansas. The offer was not made for the truth of that impression, but merely to show its influence on the defendant.

Even if the record showed that a plea bargain agreement did exist, that alone would not make the state responsible for the defendant's non-appearance. At the most, the withdrawal may have influenced defendant, but the decision not to waive extradition was his, not the state's.

■ More fundamentally, the surety overlooks the nature of its contractual obligation in regard to the defendant's availability for trial when it accuses the state of taking actions that discourage the defendant from willingly returning. Its obligation goes not merely to bringing a defendant back from another jurisdiction, but to preventing the defendant's initial departure. As stated in *State v. Wynne,* 356 Mo. 1095, 204 S.W.2d 927 (1947), a surety not only has the right to prevent a defendant from leaving the state, it has an obligation, under peril of financial loss "to keep a watch over the accused." When it fails to do so and the result is not only departure but incarceration in another jurisdiction, the protest that the state discouraged return in some

way can only be viewed as an excuse for the surety's own failure to remedy its initial and primary error in not keeping a watchful eye. That being so, our trial courts are endowed with considerable discretion in determining whether such an excuse has merit.

A consideration of the extent of that discretion overlaps into the surety's second point. Although the surety complains that the defendant was prevented from appearing because of the trial court's "unjust" application of current law when it overruled the motion to vacate forfeiture, its discussion of that point reveals that it is actually contesting the court's use of its "discretion where justice does not require forfeiture." (Logically, the court's application of law, correct or incorrect, could not have *prevented* defendant from appearing, as the surety contends, when the court's ruling occurred months after the failure to appear. We must interpret this point, then, not as an excuse for defendant's non-appearance but as a challenge to the court's exercise of discretion in not vacating the bond forfeiture.)

The trial court's discretion stems from Rule 37.104 which provides in part that "[i]f it appears to the court that justice does not require the enforcement of the forfeiture, the court may set aside the forfeiture upon such conditions as the court may impose . . . ." The substantially similar predecessor of that rule was interpreted in *State v. Wynne, supra* at 932 to vest the court with discretion to remit forfeiture of bond where the accused is either not produced or arrested by peace officers rather than the surety. Such discretion was said to be subject to review "if arbitrarily and unreasonably exercised either for or against the sureties." In *State v. Daigle, supra* 442 S.W.2d at 505, the court stated that "[w]e are of the opinion that the discretion of the court pursuant to this rule is at least as broad as that indicated in *State v. Wynne.*" In so holding, the court found that the trial court did not abuse its discretion in denying relief to the surety where the defendants were imprisoned elsewhere. "While confinement of the defendants by another jurisdiction, without participation by the State of Missouri in bringing about that confinement, does not release the surety as a matter of right . . . if supported by competent evidence such confinement would be a circumstance entitled to consideration." *Id.* at 506.

That language in *State v. Daigle,* on which the surety here relies, was referred to specifically in *State v. Jones,* 491 S.W.2d 241, 243 (Mo.1973), in which the court stated that

even if, as suggested by dicta [in *Daigle*], defendant's confinement in Illinois was a "circumstance entitled to consideration," such circumstance does not operate as a discharge as a matter of law; and . . . it may not be said . . . that the court failed to consider the circumstances of incarceration in a foreign state. The court's determination to charge the surety does not mean that no discretion was exercised; it means only that after consideration of that circumstance with all the evidence, the issue of relief requested by the surety was resolved against the surety.

We find the same to be true here. The trial court's memorandum opinion indicates that it was aware of the defendant's Kansas imprisonment and found no obligation on the part of the state in these circumstances to do anything more than it did. We agree. Although the surety argues that the state was obliged to seek a continuance or lodge a detainer against defendant before February 24, we find no precedent for such an obligation. Moreover, we note that so far as the record shows the surety itself sought neither a continuance nor the filing of a detainer and that the primary obligation to pursue every avenue to assure defendant's return rested not with the state but with the surety. In addition, we are not sure what purpose the lodging of a detainer would have served before February 24 when the state had every reason to expect that the defendant was going to be tried in Boone County on that date without a detainer. Although the surety correctly points out that it also had no reason to expect otherwise, its complaint that the trial court's ruling leaves it at the mercy of the defendant's last minute decision not to waive extradition overlooks the very nature

of its contractual obligation as surety. Implicit in the surety's relationship with the defendant is that very risk.

Sureties know and solemnly contract that the defendant shall appear and abide the orders of the court and in the event of his default are bound by their obligation. Recognizances are not idle forms. If sureties, who have it in their power to insure compliance by a defendant, may be relieved because they make diligent effort for his arrest as a fugitive there exists little inducement for diligence on their part in the first instance to prevent his escape. To exonerate sureties for such reason would seriously impede the declared policy of the State for the prevention and punishment of crime.

*State v. Hinojosa,* 364 Mo. 1039, 1043, 271 S.W.2d 522, 524 (1954).

Recognizing the nature of the surety-principal relationship and the contractual obligation imposed thereby we cannot find that the trial court abused its discretion in finding that the circumstances here did not warrant relief from the bond forfeiture.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.