Richard ASMUS, Appellant,

v.

CAPITAL REGION FAMILY
PRACTICE, et al.,
Respondents.

No. WD 61912.

Missouri Court of Appeals,
Western District.

Sept. 30, 2003.

James Mitchell Crabtree, Lenexa, KS, for Appellant.

William Jay Powell, Columbia, for Respondent McKnelley.

Albert J. Bronsky, Jr., St. Louis, for Respondent Prasad.

Charles J. McPheeters, Jefferson City, for Respondents Capital Region Family Practice-McCarty Clinic, Caywood, Rogers, Capital Region Family Physicians Clinic, and Capital Region Medical Center.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and EDWIN H. SMITH, JJ.

JAMES M. SMART, JR., Judge.

Richard Asmus appeals the trial court's dismissal of his medical malpractice claim against Capital Region Family Practice, *et al.*, the denial of his motion to amend the petition to remedy its deficiency, and the denial of his motion to reconsider. For the reasons stated below, we reverse the judgment of the trial court.[1]

## Factual Background

In July of 1999, Plaintiff Richard Asmus brought a medical malpractice lawsuit against four physicians and two healthcare facilities (collectively "Defendants"). Plaintiff's petition alleged, in part, that he suffered a severe decubitus ulcer on his lower back and buttocks as a result of the Defendants' negligence while hospitalized in July of 1997.

Prior to filing his lawsuit, Plaintiff filed for voluntary bankruptcy under Chapter 7 in February of 1999. Plaintiff did not disclose on his schedule of assets that he had an unliquidated potential claim he intended to pursue against the health care providers.

Plaintiff's bankruptcy became final on May 14, 1999, when he received a complete discharge of his debts, which consisted almost entirely of medical expenses owed to a hospital that is not a party to this lawsuit. Shortly before Plaintiff was discharged in bankruptcy, the personal injury attorneys Plaintiff had engaged declined to represent him further as to his malpractice claim. Plaintiff then contacted different attorneys about representing him on this claim. The new attorneys, who continue to represent Plaintiff, were unaware that

---

1. This opinion has been reviewed and approved by the court en banc.

the unliquidated personal injury action was not listed and exempted from the bankruptcy estate.

This lawsuit was originally filed on July 21, 1999, just before the two-year limitations period was due to expire. In November of that year, Plaintiff dismissed the lawsuit without prejudice. He re-filed the lawsuit on November 9, 2000, taking advantage of Missouri's one-year savings statute.

In his answers to interrogatories, filed on March 13, 2001, Plaintiff acknowledged that he had been discharged in bankruptcy in 1999. At Plaintiff's deposition on November 6, 2001, Plaintiff acknowledged that while still in the hospital in 1997, he formed the belief that he may have a medical negligence claim. Thus, he agreed that he formed the intention to sue the hospital nearly two years before he filed for bankruptcy.

On January 16, 2002, three of the Defendants filed a motion to dismiss, contending that the Plaintiff lacked standing to bring the cause of action in that the cause of action properly belonged to the bankruptcy estate. Defendants maintained that the proper party to prosecute a personal injury claim owned by the estate is the bankruptcy trustee. A fourth Defendant filed for summary judgment on the same grounds in February, followed closely by the final Defendant's motion to dismiss for the same reason.

Shortly after the motions to dismiss were filed, Plaintiff moved to reopen his bankruptcy case in order to amend the schedules to include the unliquidated personal injury action and to have it exempted. Plaintiff also at that time moved the circuit court to amend the medical mal-

practice petition to add the bankruptcy trustee as a plaintiff. Plaintiff's motions were filed while the defendants' motions to dismiss were pending.

Plaintiff's bankruptcy estate was re-opened on April 17, 2002. Plaintiff filed amended schedules that listed this cause of action, and Plaintiff moved to exempt the claim as an unliquidated personal injury claim. In the meantime, while his motion to exempt the personal injury claim was still pending in bankruptcy court, on May 20, 2002, the trial court granted Defendants' motions, treating them all as motions to dismiss.[2] The court declined to rule on Plaintiff's motion to amend his pleadings, thereby denying the motion.

Eleven days later, on May 31, 2002, the bankruptcy trustee filed a notice of intended abandonment regarding the claim. Plaintiff then filed a motion to reconsider, attaching the trustee's notice of intended abandonment pointing out that the trustee intended to allow plaintiff to pursue the claim individually. The trial court denied the motion to reconsider, and this appeal follows.

### The Proper Party

Plaintiff contends, in both his points on appeal, that the trial court erred in granting the Defendants' motions to dismiss. The judgment stated: "Before the Court are motions to dismiss ... all of which claim that Plaintiff, Richard Asmus, is not the proper party in interest or does not have the right to bring the current cause of action." The court did not explain why it granted the motions, but the reviewing court must presume that the decision was based on one of the reasons in the motion to dismiss. *See Turner Eng'g, Inc. v. 149/155 Weldon Pkwy., L.L.C.,* 40

---

**2.** The court originally entered an Order granting the dismissal motions. The appeal from that Order was dismissed for lack of a "Judg-

ment." On September 9, 2002, a Judgment was entered, and this is the appeal from that judgment.

S.W.3d 406, 409 (Mo.App.2001). The reason for dismissal proffered by all the motions was that the Plaintiff lacked standing to prosecute the claim in that it belonged to the bankruptcy estate and only the bankruptcy trustee could prosecute the claim.

■ In reviewing the grant of a motion to dismiss, the pleadings are liberally construed and all facts are treated as true, construing the allegations favorably to the plaintiff. *Burnside v. Gilliam Cemetery Ass'n,* 96 S.W.3d 155, 156 (Mo.App.2003). Questions of law are reviewed *de novo. Id.; Jordan v. Willens,* 937 S.W.2d 291, 293 (Mo.App.1996). Whether a party has standing to bring a cause of action is a question of law. *Kinder v. Holden,* 92 S.W.3d 793, 803 (Mo.App.2002). Thus, an examination of the applicable law is in order.

When a debtor files a petition for bankruptcy, all of his property at that point in time, including all legal and equitable interests, become part of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *In re Brooks,* 227 B.R. 891, 893 (Bankr.W.D.Mo. 1998); *Patrick v. Alphin,* 825 S.W.2d 11, 13 (Mo.App.1992). This includes an unliquidated personal injury claim. *See In re Mitchell,* 73 B.R. 93, 94 (Bankr.E.D.Mo. 1987). Thus, Plaintiff's unliquidated medical malpractice claim became a part of the bankruptcy estate.

■ After the estate is opened and a trustee is appointed, the trustee then has the capacity to sue and be sued. *Brooks,* 227 B.R. at 894; 11 U.S.C. § 701(a)(1); 11 U.S.C. § 323. Upon appointment of the trustee, the "debtor no longer has standing to pursue a cause of action which existed at the time the order for relief was entered." *Brooks,* 227 B.R. at 894. "[T]he

trustee's right to sue on behalf of the estate is an exclusive right." *Id. See also Earls v. King,* 785 S.W.2d 741, 742 (Mo. App.1990); 8A C.J.S. *Bankruptcy,* §§ 27, 117 (1988).

■ The bankruptcy code lists exemptions the debtor may claim from property of the estate. *Mitchell,* 73 B.R. at 94. Under Missouri law, a debtor may claim any federal exemptions (other than those in 11 U.S.C. § 522(d)) and any exemptions allowed under state law. *Id.;* § 513.427, RSMo 2000. Section 513.427 allows an exemption for any property "that is exempt from attachment and execution." Because unliquidated personal injury actions, such as this medical malpractice claim, are not subject to attachment and execution prior to judgment and are not assignable, they can be (and generally are) exempted from the bankruptcy estate under Missouri law. *Brooks,* 227 B.R. at 894; *Patrick,* 825 S.W.2d at 13. The defendant-respondents agree in this case that the claim in question would qualify as an exempt claim.

■ To obtain the exemption, however, the debtor must list the property claimed as exempt on the proper schedule of assets.[3] *Brooks,* 227 B.R. at 893–94. Until he does so and the asset is relinquished by the trustee, it remains the property of the estate. *Id.* at 894. The trustee owns the asset, and, as noted above, the debtor lacks standing to bring the cause of action in his own name. *See Brooks,* 227 B.R. at 894–95 (debtor lacked standing to bring a malpractice lawsuit after the appointment of the bankruptcy trustee where the claim had not been exempted from the estate prior to filing the lawsuit).

---

**3.** The claim should have been listed on schedule B, § 20, under "unliquidated claims of

every nature," and on schedule C, the section for exempt property.

In this case, Plaintiff failed to include the unliquidated personal injury claim as an asset on the proper bankruptcy schedules. Plaintiff maintains that his bankruptcy attorney told him the claim did not need to be listed on the bankruptcy schedules. The claim, as noted above, was a part of the bankruptcy estate, although suit had not been filed. Because the asset was not listed as exempt, it remained the property of the estate, and the bankruptcy trustee had the exclusive right to pursue this claim on behalf of the estate prior to exemption. Thus, we agree that the Plaintiff was not the proper party to bring the cause of action in his own name.

Plaintiff also concedes that he was not the proper party plaintiff, but plaintiff argues that the matter does not end with that determination. Prior to ruling on the motions to dismiss, the court had before it Plaintiff's motion to amend his pleading to add the bankruptcy trustee as a plaintiff. This, according to plaintiff, should have entered into the court's consideration with regard to the motion to dismiss. We agree. Although plaintiff was not the proper party to bring the lawsuit in his own name, his motion to add the bankruptcy trustee would have cured the deficiency in his pleading. Plaintiff contends that the trial court erred in refusing to grant his motion to amend (1) because motions to add or substitute a party should be freely granted when justice so requires; (2) because the Defendants would not have been prejudiced by the amendment in that they had notice of the issues, which would have remained the same; and (3) because Missouri courts generally favor a decision on the merits of a case over technical or procedural grounds.

Allowing amendments to pleadings is within the sound discretion of the trial court. *Pender v. Foeste*, 329 S.W.2d 656, 659 (Mo.1959). As a general rule, amendments to pleadings should be liberally allowed. *Id.*; 659 Am.Jur.2d *Parties* § 404 (2002). Review of a trial court's denial of a motion to amend the pleadings is for an abuse of discretion. *Rhodus v. Wheeler*, 927 S.W.2d 433, 436 (Mo.App.1996). If it appears that, because of a misunderstanding of the law, the court failed to exercise discretion, the judgment will be vacated and the case remanded so that the court can exercise its discretion. *See State v. Wynne*, 356 Mo. 1095, 204 S.W.2d 927, 931 (1947) (refusal to exercise discretion because of belief the court lacked jurisdiction to do so).

## Amendments Should Be Granted When Justice So Requires

Motions to amend to add or substitute a party should be freely granted when justice so requires. Missouri rules of procedure provide that a party may amend his pleadings at any time by leave of the court and that such leave should be freely given. *Sher v. Chand*, 889 S.W.2d 79, 83 (Mo.App.1994); *see* Rules 52.06 and 55.33(a). Furthermore, the trial judge has broad discretion to permit amendment of the pleadings at any stage of the proceedings, even after verdict. *Sher*, 889 S.W.2d at 83; Rule 52.06. In *Sher*, 889 S.W.2d at 83, the defendant challenged the trial court's allowing the correct party plaintiff to be substituted after a default judgment was taken by a plaintiff who was not the proper party. The appellate court affirmed, finding that Missouri Rules of Civil Procedure allow substitution or addition of a party at any time so long as the court retains jurisdiction to do so. *Id.*

Rule 52.06 provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative *at any stage of the action* and *on such terms as are just.*" (Emphasis added.) *See also* 67A C.J.S., *Parties,* § 79 (1978)

("Under various statutory provisions, substitution of parties may be proper at any time before a judgment").

■■■ Rule 55.33(a) mandates that "leave [to amend] *shall be freely given when justice so requires.*" (Emphasis added.) The function of that rule is to enable matters to be presented that were unknown to a party at the time he filed his original pleading. *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 802 (Mo.App.1975). Rule 55.33(a) is derived from Federal Rule 15(a). *See Scott v. Gibbons,* 611 S.W.2d 387, 390 n. 4 (Mo.App.1981). Like Rule 55.33(a), Federal Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." "[T]his mandate is to be heeded," said the United States Supreme Court in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■■■ The Court in *Foman* discussed factors courts should consider in deciding whether to permit amendments:

> In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought should, as the rules require, be "freely given".

371 U.S. at 182, 83 S.Ct. 227. Other factors to be considered include: hardship to the moving party if not granted; reasons the new matter was not included in earlier pleadings; timeliness of the motion; and whether the amendment would cure the deficiency in the pleading. *Manzer v. Sanchez,* 985 S.W.2d 936, 939 (Mo.App. 1999).

Plaintiff asserted in his motion to amend (1) that his failure to list the asset in his bankruptcy was not intentional and did not benefit him since under Missouri law the action would have been listed as exempt and abandoned by the trustee; (2) that he did not try to hide this potential cause of action from his bankruptcy attorney, nor did he try to hide the fact of his bankruptcy from the Defendants; and (3) that the Defendants would suffer no prejudice by allowing Plaintiff to amend his petition, in that the issues remain the same and the addition of the trustee would in no way change the claim against the Defendants.

Defendants point to no evidence that Plaintiff was motivated by "undue delay, bad faith or dilatory motive." The Plaintiff's reason for not including the bankruptcy trustee as a plaintiff earlier was, according to Plaintiff, that he mistakenly believed he was the proper party to bring the cause of action.

### Prejudice to the Defendants

The most frequent reason for denying leave to amend is that the opposing party will be prejudiced. 6 WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 1487, at 613 (2nd ed.1990). Defendants claim that they would have been prejudiced had the trial court granted the amendment because (1) the addition of the bankruptcy trustee would have resulted in the creation of an entirely new claim against them, and (2) the claim would have been barred by the statute of limitations unless the amendment related back to the original filing date.

■■■ As for the argument that defendants would have been prejudiced in that the addition of the bankruptcy trustee would have resulted in the creation of an entirely new cause of action against them, we disagree. "The law in Missouri for nearly a century is a new action is not commenced by substituting the party having the legal right to sue instead of anoth-

er party improperly named." *Union Ctr. Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 8 (Mo.App.1987). This rule is especially true where the subject matter of the suit and the issues to be tried are unchanged, as is the case here. *Id.*

In *Union Center,* the trial court allowed the substitution of the proper party plaintiff after learning that the original plaintiff was not the correct party. 733 S.W.2d at 8. The reviewing court affirmed, citing Rule 52.06. The court determined that not only did the substitution not create a new cause of action, but also noted that "[a]t all times [defendant] was aware of the subject matter and the issues raised . . . there has been no showing by [defendants] that they have been prejudiced by the amended petition." *Id.* at 8–9. *See also Sher,* 889 S.W.2d at 84 (no prejudice to defendant in that no new issues or causes of action were interjected into the suit by allowing the substitution of the proper plaintiff, and at all times, defendant was aware of the subject matter and the issues raised).

The cases on which *Union Center* relies, *Cytron v. St. Louis Transit Co.,* 205 Mo. 692, 104 S.W. 109, 110–11 (1907), and *Lilly v. Tobbein,* 103 Mo. 477, 15 S.W. 618 (1891), along with *Estate of Jones v. Planters Grain & Seed Co.,* 723 S.W.2d 91 (Mo. App.1987), and *St. Paul Fire & Marine Ins. Co. v. Continental Building Operating Co.,* 137 F.Supp. 493 (W.D.Mo.1956), all state that an amendment to bring in a plaintiff with the legal right to sue instead of one improperly named as a plaintiff does not create a new cause of action. *See, e.g., Cytron,* 104 S.W. at 109–11 (no new cause of action so long as amendment

does not change substantially the claim or defense and it "requires the same quantum and quality of evidence").

With regard to adding a new plaintiff, it has been stated that

[a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitation defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading.

*Rotella v. Joseph,* 615 S.W.2d 616, 624 n. 8 (Mo.App.1981) (*citing* 6 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 1501, at 523). In this case, the Defendants were fully apprised of the claim against them and had the opportunity to prepare to defend against it. Granting the amendment to add the bankruptcy trustee would not have created a new cause of action. All the issues would have remained the same; the only change would have been in the plaintiff. Because the claim would have remained unchanged with the addition of the bankruptcy trustee, the Defendants would not have been prejudicially affected.

█ As for the argument that defendants are prejudiced because they lose the benefit of the statute of limitations (which is really the same argument articulated in a different way), we disagree again.[4] In

---

4. In their statute of limitations arguments, Defendants rely partly on cases involving other contexts such as wrongful death claims brought by a person not entitled to sue under a specific statute. *E.g., Henderson v. Fields,* 68 S.W.3d 455, 467 (Mo.App.2001); *State ex rel. Jewish Hosp. of St. Louis v. Buder,* 540

S.W.2d 100 (Mo.App.1976). In some cases under the wrongful death statute, the courts hold that an amendment to add or substitute the proper party relates back to the initial filing, and in other cases, the courts have held that the amendment does not relate back. *See Rotella v. Joseph,* 615 S.W.2d 616, 620

*Estate of Jones v. Planters Grain & Seed Co.,* 723 S.W.2d 91 (Mo.App.1987), a similar case where a debtor mistakenly filed a lawsuit in his own name, the trial court allowed the bankruptcy trustee to be substituted as the plaintiff. The appellate court affirmed, dismissing the defendant's claims that it would be prejudiced due to the expiration of the statute of limitations. *Id.* at 92. The court stated: "[W]here a plaintiff pleads a specific set of facts in trying to enforce a claim within the statutory period, and defendant had notice of such a claim from the date of its filing, the reasons for statute of limitations cease to exist." *Id.* The court found that the defendant suffered no prejudice as a result of the substitution, "as it knew from the beginning what the claim was, and had the opportunity to timely investigate it and prepare its defenses." *Id.* The court explained: "It is clear from an unbroken line of Missouri decisions that if a suit is brought by one who has a *beneficial interest* in the subject matter," the substitution of the proper plaintiff will relate back to the filing of the original action and the action will not be barred by the statute of limitations. *Id.* at 92, n. 3 (*citing St. Paul Fire & Marine Ins. Co.,* 137 F.Supp. at 494) (emphasis added). The *Planters* court found that the debtor plaintiff in that case did have a beneficial interest in the disposition of the assets of the bankruptcy estate.

Defendants rely on *Earls v. King,* 785 S.W.2d 741 (Mo.App.1990). In that case, the court affirmed the trial court's denial of a motion to substitute the bankruptcy trustee for the debtor plaintiff when that motion was brought after the statute of limitations expired. It appears that the

*Planters* case and *Earls* are in direct conflict. *Earls,* however, made no mention of *Planters,* decided three years earlier, in reaching the conclusion that the substitution should not be allowed because the "original plaintiff had no *legal interest* in the cause of action." *Earls,* 785 S.W.2d at 744 (emphasis added). *Earls* also did not discuss whether the original plaintiff may have had a "beneficial interest" in the subject matter of the lawsuit. Along with the *Planters* case and *St. Paul Fire & Marine,* 137 F.Supp. 493, on which it relies, other cases state that if the original plaintiff has a beneficial interest, though not necessarily a legal interest, in the subject matter of the lawsuit, then substitution of the proper plaintiff will relate back so as to avoid the bar of the statute of limitations. *See, e.g., Griffin v. Miller,* 899 S.W.2d 930, 933–34 (Mo.App.1995), and *Rotella v. Joseph,* 615 S.W.2d 616, 620 (Mo.App.1981). A beneficial interest is a "right or expectancy in something ... as opposed to legal title to that thing." BLACK'S LAW DICTIONARY 149 (7th ed.1999).

The respondents here concede that the alleged malpractice claim is exempt under Missouri law, and thus concede that the federal bankruptcy court would have allowed the trustee to abandon the claim so that plaintiff could pursue the matter himself. Because the respondents acknowledge the exempt nature of the claim, there is no question that Plaintiff Asmus, like the debtor in *Planters,* had a beneficial interest in the subject matter of the lawsuit. The amendment to add the bankruptcy trustee should therefore relate back to the date of the original filing so as to avoid the bar of the statute of limitations.

(Mo.App.1981). In any event, those cases involve a statutorily created claim that "must be technically and strictly construed[.]" *Buder,* 540 S.W.2d at 108. This case, in contrast,

does not involve a claim created by a specific statute, but involves a common law negligence claim.

It appears that the court in *Earls*, in deciding the issue before it, simply was not aware of the *Planters* case. Between the two cases, we believe that *Planters* represents the sounder view because it allows the court to consider whether the plaintiff is guilty of any improper motive, and whether the defendants would be prejudiced by the amendment. We conclude that it is more in keeping with the purposes of pleading rules to consider the pertinent factors rather than simply precluding the amendment on a technicality without consideration of how justice would best be served.

■ Under common law rules, every action had to be instituted in the name of the person who had legal title, right, or interest, regardless of whether that person had a beneficial interest. 59 Am Jur.2d Parties § 25. "Real party in interest" statutes were adopted to broaden pleading requirements to permit the person beneficially interested to sue in his or her own name. *Id.* Usage of the phrase "real party in interest," however, has also come to include reference to the person who possesses the legal right to bring the suit, which is not necessarily the person who benefits from the recovery. *Id.*, § 36. Thus, in accordance with this use of term, it is not incorrect to say that the bankruptcy trustee was the "real party in interest" in this matter, although the "real party in interest" rules were originally adopted more for including the beneficially interested parties than for excluding them. In any event, the fact that the trustee has the exclusive legal right to bring the action does not end the inquiry, because the raising of the issue made it incumbent on the trial judge to exercise discretion as to whether to grant leave to amend. The "real party in interest" rules and other rules concerning parties are designed primarily to get the right parties into the

case and before the court. We find no indication that they were designed to create a procedural trap for the unwary. *See Sher*, 889 S.W.2d at 83. It is proper to add necessary parties rather than dismiss an action for the lack thereof. *See, e.g., Kingsley v. Burack*, 536 S.W.2d 7, 13 (Mo. 1976); *Ward v. Bank Midwest*, 871 S.W.2d 649, 651 (Mo.App.1994).

Courts in other jurisdictions have also allowed a bankruptcy trustee to be brought in as a plaintiff after the expiration of the statute of limitations even though the debtor had erroneously filed the cause of action in his own name. Those decisions are based primarily on the premise that justice required allowing the amendments and the defendants would suffer no prejudice from allowing the amendment. In *Crumpacker v. DeNaples*, 126 N.M. 288, 968 P.2d 799 (App.1998), the defendant moved for summary judgment based on lack of standing under circumstances very similar to those in this case. The appellate court held that the trial court abused its discretion in denying the plaintiff's motion to add the bankruptcy trustee. *Id.* at 807. In reversing the trial court, the *Crumpacker* court relied on the reasoning in *Foman, supra.* As noted above, *Foman* is equally applicable to this case since Missouri's Rule 55.33(a) is similar to the Federal Rule discussed in *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

In *Hammes v. Brumley*, 659 N.E.2d 1021 (Ind.1995), the Indiana Supreme Court cited public policy reasons for allowing an amendment to add the bankruptcy trustee as a plaintiff: the plaintiff debtor derived no benefit from filing in his own name rather than that of the trustee; the creditors of the bankrupt would otherwise be deprived of the potential asset; and the defendants would not be prejudiced since they had notice of the claim and the issues

remained the same except for the addition of the trustee as a party. *Id.* at 1030.

 Some of these considerations exist in this case. At the same time, other policy issues are implicated when a debtor fails to account for all his assets in his bankruptcy filings. These are proper matters for the court to consider. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Manzer*, 985 S.W.2d at 939. If the court determines that the non-disclosure occurred in bad faith, the court may consider that fact in denying permission to amend. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. Here, although it is conceivable that the court disbelieved Plaintiff's assertion that his bankruptcy attorney advised him he did not need to list the lawsuit, we cannot determine from the record that the court disbelieved him. *See Crumpacker v. Naples*, 968 P.2d at 806 (no evidence in the record to support anything other than "an honest mistake;" therefore, plaintiff should have been allowed to add the bankruptcy trustee as a party). We conclude that, unless the court here determined that this plaintiff acted in bad faith, leave should have been granted.

An abuse of discretion is found where a "ruling is [so] clearly against the logic of the circumstances ... and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). In *Foman* the Court acknowledged that the grant or denial of a motion to amend is within the discretion of the trial court, but noted that "outright refusal to grant the leave *without any justifying reason appearing* for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the [Rule]." *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

In this case, no reason justifying the denial is readily apparent. We do not know the court's considerations in not granting Plaintiff's motion to amend to add the trustee. We can speculate that the court thought Plaintiff had been intentionally deceptive in his bankruptcy filing, but there is nothing in the record to confirm that. It is more likely that the court mistakenly believed that it had no discretion to consider the principle that leave to amend should be freely granted when justice so requires. When it appears that the trial court, because of a misunderstanding of the law, failed to exercise its discretion, we will generally reverse and remand to allow the court to exercise its discretion. *State v. Wynne*, 356 Mo. 1095, 204 S.W.2d 927, 931 (1947).

In light of the above considerations, we reverse the judgment of the trial court and remand the cause for the court to exercise discretion and either allow the case to go forward or to provide justification as to why the motion to amend to add the bankruptcy trustee should be denied. Plaintiff's second point, related to the motion for reconsideration, is moot in view of our action on point I.

### Conclusion

Because it appears that the court here did not exercise its discretion, we reverse the judgment of the trial court and remand to the trial court with instructions to exercise discretion as to the motion to amend in light of the appropriate considerations.

LOWENSTEIN and EDWIN H. SMITH, JJ., concur.