Bassam KHULUSI, M.D., and Metcalf
Medical Group, Inc., Appellants,

v.

SOUTHWESTERN BELL YELLOW
PAGES, INC., Respondent.

No. WD 50429.

Missouri Court of Appeals,
Western District.

Nov. 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied
March 26, 1996.

Jeremiah D. Finnegan, Finnegan, Conrad & Peterson and Thomas B. Sullivan, III, Sullivan & Williams, Kansas City, for appellants.

Lawrence A. Rouse, Phillip G. Greenfield, and Melissa C. Hinton, Rouse, Hendricks, German, May & Shank, P.C., Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ULRICH, Judge.

Bassam Khulusi, M.D., appeals the trial court's grant of summary judgment to Southwestern Bell Yellow Pages, Inc. (SWBYPS) on Count IX of his petition for intentional tort, Count IV—negligence, and on Counts IV and V on grounds that SWBYPS is not a public utility. Dr. Khulusi also claims error in the trial court's dismissal of count II—interference with business relationships, for failure to state a claim upon which relief could be granted.[1]

The judgment is affirmed.

In 1986, Bassam Khulusi and Metcalf Medical Group, Inc., of which Dr. Khulusi is the sole shareholder, contracted with SWBYPS to place certain listings and advertisements in the 1986–1987 Greater Kansas City Yellow Pages (Yellow Pages) under listings entitled Physicians and Surgeons and Weight Control Services. Dr. Zaremski, a physician who rented office space from Dr. Khulusi, also separately contracted with SWBYPS for a listing at the same address and telephone number. Both these arrangements were conducted by Laura Khulusi, the authorized representative of both Dr. Khulusi and Dr. Zaremski. She arranged for SWBYPS to bill Dr. Zaremski separately for his listing.

---

1. Dr. Khulusi raises two other points on appeal. These points are not addressed because the trial court ruled the issues in Dr. Khulusi's favor and he is not an aggrieved party. *Meglio v. Hebel,* 759 S.W.2d 615, 616 (Mo.App.1988); § 512.020, RSMo 1994. Apparently Dr. Khulusi was endeavoring to defend the trial court's rulings, anticipating an unrealized cross-appeal.

In 1987 Appellants contracted with SWBYPS to re-publish in the 1987–88 Yellow Pages the same listings and advertisements that appeared in the 1986–87 Yellow Pages. At the same time, Dr. Zaremski also contracted to have his 86–87 Yellow Pages listing re-published in the 1987–88 Yellow Pages. Both contracts were signed by Laura Khulusi. Both listings were under the account designation N0094066 with suffixes of 00 and 01 for Dr. Khulusi and Dr. Zaremski, respectively.

On September 23, 1987, Richard Kruckemeyer, sales representative of SWBYPS, contacted Dr. Khulusi by telephone in an effort to speak to Dr. Zaremski. The purpose of the call was to notify Dr. Zaremski that due to non-payment of his charges for the 1986–87 Yellow Pages, his listing for the 1987–88 Yellow Pages was at risk of being excluded. His account was sufficiently past due that SWBYPS had "written it off." Mr. Kruckemeyer assured Dr. Khulusi that his account was current and only Zaremski's listings were in jeopardy. The next day Dr. Zaremski paid the outstanding balance on his account in person at SWBYPS Kansas City office. Mr. Kruckemeyer, then sent the payment along with an "unlock" request to the St. Louis office. SWBYPS policy provides that unlocking an account permits publishing in the directory.

SWBYPS St. Louis office rejected the unlock request for failure to receive thirty-five percent advance payment, the sum of $169.05, on the contract. SWBYPS policy requires advertisers to pay in full any delinquent balances before new advertisement will be published. Additionally, if the amount past due has been written off, an additional thirty-five percent advance is required for future advertisements.

Mr. Kruckemeyer was notified that the request to unlock had been rejected on October 2, 1987. He then tried to resubmit the unlock request without the advance payment. On October 6, 1987, St. Louis office rejected the request again. Neither Dr. Khulusi nor Dr. Zaremski were contacted until October 7, 1987, when Dr. Khulusi was told that if the additional payment was not received, Dr. Zaremski's advertising would not appear in the 1987–88 Yellow Pages. Dr. Khulusi then wrote a Metcalf Medical Group check for the $169.05 payment and mailed it that day to the Kansas City Office. The likeness of the check was faxed from the Kansas City office to St. Louis on October 9, 1987, as proof that the check had been received by the SWBYPS Kansas City office. The St. Louis office claims it did not receive the check until October 13, 1987, three days after the "unload date." The unload date is the last date upon which advertisements can be released for inclusion in the next Yellow Pages edition.

No one from the SWBYPS thereafter contacted either doctor to inform them that the advertisements had been excluded. Not until Dr. Khulusi received his copy of the 1987–88 Kansas City Yellow Pages did he discover that neither Dr. Zaremski's listing nor his own was included.

Upon inquiry, Dr. Khulusi learned that the listings were excluded for failure to receive the advance payment by the unload date of October 10, 1987. The SWBYPS complaint department determined that the sales department was responsible for the error and offered a return equal to one hundred percent of the contract price. This was consistent with the Disclaimer of Warranties and Limitation of Liability provision contained in the contract between the parties.

Appellants' amended petition contained nine counts against SWBYPS. Counts II, VII, and VIII were dismissed by the trial court. SWBYPS then moved for summary judgment on the remaining six counts which alleged breach of contract, prima facie tort, undue discrimination, inadequate service, negligence and intentional tort. The trial court granted summary judgment to all counts except count IX which pleaded intentional tort. However, SWBYPS's oral motion to reconsider the order granting summary judgment resulted in the trial court granting reconsideration and ordering summary judgment on all counts in favor of SWBYPS.

### I. Summary Judgment

#### A. Intentional Tort Theory

Dr. Khulusi claims in his first point on appeal that the trial court erred in granting

summary judgment as to Count IX—Intentional Tort, in that the limitation of liability provision in the contract is inapplicable to damages suffered as a result of willful and wanton conduct.

■ Summary judgment is proper if there are no genuine issues of material fact and movant is entitled to judgment as a matter of law. Rule 74.04(c)(3). In considering appeals from summary judgment, appellate courts review the record in the light most favorable to the party against whom judgment was granted. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc.1993). Review is *de novo*, testing the propriety of summary judgment as the trial court would. *Id.*

■ The courts of this state have never recognized a mere breach of contract as providing a basis for tort liability. *American Mortg. Inv. Co. v. Hardin–Stockton Corp.*, 671 S.W.2d 283, 293 (Mo.App.1984). The act, not the breach gives rise to tort liability. *Id.* Thus, if the act done independent of the contract would result in a tort, it will continue to do so. *See Engman v. Southwestern Bell Telephone Co.*, 591 S.W.2d 78 (Mo.App. 1979) (Invasion of privacy is an intentional tort and tariff will not bar action). The contrary does not hold true. If absent a contract the act would not be a tort, the mere breach of an agreement will not create one. Here, SWBYPS's duty arose from the contract.[2] The omission of Dr. Khulusi's ad in the 1987–88 Yellow Pages would not have been a tort had the contractual relationship not existed. SWBYPS owed no duty to Dr. Khulusi external to the contract.

■ A limitation of liability provision within a contract is effective if defendant's conduct is negligent but is ineffective for willful and wanton conduct. *Warner v. Southwestern Bell Telephone Co.*, 428 S.W.2d 596, 603 (Mo.1968). Willful and wanton conduct means an intentional act. *Engman v. Southwestern Bell Telephone Co.*, 591 S.W.2d 78, 81 (Mo.App.1979). A contractual limita-

tion will not protect from acts which are intentional torts. *Tobler's Flowers, Inc. v. Southwestern Bell Tel. Co.*, 632 S.W.2d 15, 17 (Mo.App.1982). The question then becomes whether omission of Dr. Khulusi's advertisement from the 87–88 Yellow Pages was an intentional tort or negligent omission.

■ Intentionally implies that an act done was not a mere accident. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 813 (Mo. banc.1984). Intent to cause injury is an intent to cause harm to plaintiff not merely an intent to do the act purportedly resulting in the claimed injury. *Gary Surdyke Yamaha, Inc. v. Donelson*, 743 S.W.2d 522, 525 (Mo.App.1987).

In this case, omission of Dr. Khulusi's listing and advertisement was due to the negligence of the SWBYPS in not entering payment into the computer system in time to meet the unload date. No evidence of ill will toward Dr. Khulusi or evidence to suggest SWBYPS intended to cause injury was offered in response to the motion for summary judgment. The omission was intentional only in that the advertisement was omitted from the 1987–88 Yellow Pages purposefully due to company policy regarding payment before the unload date. The payment however, was not recorded as received because of SWBYPS's negligence.

### B. Negligence Theory

■ Dr. Khulusi next claims that granting summary judgment as to Count IV—Negligence was error in that the contractual limitation of liability provision was not applicable because SWBYPS had breached the contract first. The alleged breach is based on the SWBYPS requirement of an advance payment when an account is delinquent and has been written off. This argument is now raised on appeal for the first time. Such argument will not be permitted when raised on appeal for the first time, thereby denying the trial court the opportunity to address the

---

**2.** No statutory duty under public utility statutes is imposed on the Yellow Pages. See discussion relating to point III.

claimed error. *Cline v. Graves,* 641 S.W.2d 151 (Mo.App.1982).

Point I is denied.

## II. *Motion to Dismiss Count II— Interference with Business relationships*

Dr. Khulusi asserts as his second point that the trial court erred in granting SWBYPS's motion to dismiss Count II—Interference With Business Relationships because he pleaded every necessary element to assert the cause of action.

■■■■ This is another issue not raised at the trial court level. SWBYPS moved to dismiss appellants' claim for interference with business relationships. Appellants did not oppose the motion before the trial court and the trial court sustained the motion because it was not opposed. A party is bound by the positions taken at trial and will not be heard on a different theory at the appellate level. *Scott v. Edwards Transp. Co.,* 889 S.W.2d 144, 147 (Mo.App.1994). Further, an appellate court will not convict the trial court of error on an issue which was never before it to decide. *Id.; Estate of Munzert,* 887 S.W.2d 764 (Mo.App.1994); *Ibarra v. Missouri Poster and Sign Co.,* 838 S.W.2d 35, 40 (Mo.App.1992).

Point II is denied.

## III. *Public Utility*

■■■■ In Dr. Khulusi's third point on appeal, he claims error in the trial court's granting defendant's motion for summary judgment on Counts IV and V, which are based on the court's finding that SWBYPS was not a public utility.

§ 386.020(32) RSMo. (1994) defines a public utility as:

> every ... telecommunications company, ... as these terms are defined in this section, and each thereof is hereby declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provision of this chapter.

Three other definitions are relevant in determining whether SWBYPS is a telecommu-

nications company qualifying as a public utility.

> (42) "Telecommunications company" includes telephone corporations ... owning operating controlling or managing any facilities used to provide telecommunications service for hire, sale or resale within this state.
>
> (43) "Telecommunication facilities" includes lines, conduits, ducts, poles, wires, cables, crossarms, receivers, transmitters, instruments, machines, appliances and all devices, real estate, easements, apparatus, property and routes used, operated, controlled or owned by any telecommunications company to facilitate the provision of telecommunications service;
>
> (44) "Telecommunications service", the transmission of information by wire, radio, optical cable, electronic impulses, or other similar means. As used in this definition, "information" means knowledge or intelligence represented by any form of writing, signs, signals, pictures, sounds or any other symbols ... 386.020 RSMo. (1994)

SWBYPS does not provide telecommunications service as defined in 386.020(44). The company does not transmit information by wire, radio, optical cable or electronic impulses. Providing telecommunications services is a prerequisite for classifying an entity as a telecommunications company.

Dr. Khulusi argues that section 386.020(43) "Telecommunications facilities" was overlooked, and the statute's application results in classification of SWBYPS as a public utility. However, the statute does not compel a finding that a directory published by an independent company is a telecommunications facility as defined by the statute. The word "facilities", to which appellant directs attention, does not apply to a spectrum of items or services related to phone data. The term "telecommunications facilities" refers to those items specifically enumerated within the statute.

Appellants' also rely on *Videon Corp. v. Burton,* 369 S.W.2d 264 (Mo.App.1963), as authority holding that the Yellow Pages published in this case is subject to regulation by the Public Service Commission and is, there-

fore, a utility. *Videon* presented the issue of whether the Public Service Commission, the body designated to regulate utilities, had jurisdiction to regulate advertising in the telephone company's classified directory. The court noted that the weight of authority treats publication of a classified telephone directory as being a private matter versus a public service. *Id.* at 269. The Court nevertheless, decided the directory was an integral part of the telephone company and its service and, therefore, subject to regulation by the Public Service Commission. The court decided the publication was property within the definition of 386.020(18) [3] that facilitated the business of telephonic communication. *Id.* at 270.

Several changes have occurred since *Videon.* In 1963, when *Videon* was decided, the Yellow Pages was published by Southwestern Bell Telephone Company, the same company providing telephone services. Beginning in 1984 and continuing thereafter, an independent corporation, Southwestern Bell Publications, has published the Yellow Pages. This company is a separate and nonregulated publishing company and assignee of the properties formally used to publish the Yellow Pages by Southwestern Bell Telephone Company. *Garrison v. Public Service Com'n,* 772 S.W.2d 670, 672 (Mo.App.1989).

The second change since *Videon* is the statutory language. In 1963, at the time of *Videon,* the jurisdiction of the Commission included regulating "all telephone lines" and "telephone companies that conduct and operate such" lines. § 386.025(18), RSMo 1959. Section 386.020(18) defined the term "telephone line" as used within the chapter to include a variety of things, including "real estate" and "appliances and all devices" "controlled or owned by any telephone corporation to facilitate the business of affording telephonic communication." The current version of the statute defines "telecommunication facilities" that effect the provision of *telecommunication service.* § 386.020(43), RSMo 1994.

The third change impacting classification of the Yellow Pages occurred in 1985 when Section 386.330 RSMo. was being amended

to exclude complaints concerning Yellow Page listings and advertisements from the Public Service Commission's jurisdiction. Amendment of the Public Service Commission's jurisdiction was in response to divestiture of the telephone companies. *See Garrison* at 672.

■ The Yellow Pages is not a public utility. To constitute a public utility and be subject to regulation by the Commission, a service must be devoted to public use. *State ex rel M.O. Danciger and Company v. Public Service Commission,* 275 Mo. 483, 205 S.W. 36, 40 (banc.1918). The publishing of advertisements in the classified section of a telephone directory is a matter of private contract and is not a public service. *Mitchell v. Southwestern Bell Telephone Co.,* 298 S.W.2d 520, 524 (Mo.App.1957). In *Mitchell,* the plaintiff sought damages against the phone company for misprinting his telephone number in his telephone directory advertisement. The cause was found to be a matter of private contract between the subscriber and the telephone company, not a breach of public duty. *Id.* at 524. Even in *Danciger,* which involved the provision of electricity, the court concluded that since service was provided after a special contract, the company was "plainly" engaged in private business and was not a public utility. *State ex rel. M.O. Danciger and Company,* 205 S.W. at 40.

Because Yellow Pages is not a public utility, granting summary judgment on Counts IV and V was not error.

Point III is denied.

The judgment is affirmed.

All concur.

---

**3.** This section was changed and replaced by  386.020(43).