

# Missouri Court of Appeals

### Southern District

### Division Two

MISSOURI OZARKS RADIO,　　　　)
NETWORK, INC., and　　　　　　　)
CENTRAL OZARKS RADIO　　　　　)
NETWORK, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　Plaintiffs-Respondents,　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　No. SD35569
　　　　　　　　　　　　　　　　　)　　Filed:  January 27, 2020
LUKE BAUGH, and　　　　　　　　)
JGR TECHNOLOGIES, LLC,　　　　　)
d/b/a JAGGAR TECHNOLOGIES, and　)
RAY GOBEL,　　　　　　　　　　　)
GUY RAMSEUR, and　　　　　　　　)
JOHN NEGRI,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　Defendants-Appellants.　　　　　)

### APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Harvey S. Allen, Special Judge

### **AFFIRMED**

This case arises from a conversion action involving the internet domain name "kuku.com."  The domain name was the internet presence of a radio station, which was one of several local radio stations owned by Missouri Ozarks Radio Network, Inc. (MORN) and Central Ozarks Radio Network, Inc. (CORN).  Both MORN and CORN are owned by Ozarks Radio Network, Inc. (ORN).  Following the unauthorized sale of the domain name, the stockholder of ORN, Tom Marhefka (Marhefka), initiated this conversion action

against: Luke Baugh (Baugh), individually and as an agent of JGR Technologies, LLC (JGR); JGR; and JGR's three LLC members, Ray Gobel (Gobel), Guy Ramseur (Ramseur) and John Negri (Negri) (hereinafter collectively referred to as Defendants). The conversion petition listed only MORN as the plaintiff.

Following a bench trial, but before judgment was entered in the matter, MORN moved to add CORN as a plaintiff pursuant to Rule 52.06.[1] The trial court granted the motion. Thereafter, the court found in favor of CORN and against Baugh, JGR and each of JGR's LLC members by piercing "the LLC veil" of the limited liability company. The court entered judgment against Defendants jointly and severally for $50,000, plus interest from the date of the conversion.

On appeal, Defendants present eight points. These points essentially present three challenges to the judgment. First, Points 1-4 challenge the trial court's decision to add CORN as a plaintiff. Second, Point 5 challenges the court's decision that the domain name is personal property that may be converted. Third, Points 6-8 challenge the court's decision to impose personal liability upon the JGR members. Finding no merit in any of these points, we affirm.

## Standard of Review

The judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. *Denny v. Regions Bank*, 527 S.W.3d 920, 924-25 (Mo. App. 2017). In this court-tried case, our review is governed by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We are required to affirm the trial court's

---

[1] All rule references are to Missouri Court Rules (2019). All statutory references are to RSMo (2016).

2

judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. "We review issues of law *de novo*." *Denny*, 527 S.W.3d at 925. With respect to factual determinations, we defer to the trial court's credibility determinations and assessment of the weight of witness testimony. *Metzger v. Franklin*, 496 S.W.3d 547, 549 (Mo. App. 2016). "The trial court is free to believe all, none, or part of the testimony of any witness." *Id*.

We review the trial court's decision to add CORN as a plaintiff for an abuse of discretion. When a ruling is discretionary "it is presumed correct and appellant bears the burden of showing an abuse of discretion." *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988). Such discretion "is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *Id*.

### Factual and Procedural Background

All evidence and reasonable inferences therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence and inferences to the contrary are disregarded. *Landewee v. Landewee*, 515 S.W.3d 691, 694 (Mo. banc 2017). So viewed, the following facts were adduced at trial.

In 1998, when the internet was first developing and an online presence was becoming more prevalent for businesses, Marhefka began working with JGR's predecessor, "Ozarks Internet, Incorporated, d/b/a Town Square Internet" (Town Square). Marhefka and Town Square worked together for their mutual benefit under a barter

agreement. As part of this agreement, Town Square, by its then owner/manager Bill Davis (Davis), registered domain names, including kuku.com, for each of the radio stations owned by MORN and CORN (hereinafter referred to collectively as Plaintiffs). Marhefka, on behalf of Plaintiffs, paid for each registration and relied on the technical expertise of Town Square to perform and maintain the registrations.

In addition to registering the domain names, Town Square provided web hosting and other services to a number of local businesses, including Plaintiffs, using a server owned by Marhefka. All of the hosting services for Plaintiffs' websites were performed on the server owned by Marhefka, and all of the content on the sites was created by Plaintiffs' agents and stored on that server. In addition, Plaintiffs provided Town Square with advertising on Plaintiffs' websites. Plaintiffs later allowed Town Square's successor, JGR, to use Plaintiffs' radio towers to provide internet service to JGR's clients.[2] Pursuant to this arrangement, one party would be reimbursed only for out-of-pocket expenses incurred for the benefit of the other party. This included the renewal fees for the various domain names paid by Defendants and reimbursed by Plaintiffs. Defendants paid these fees because a Town Square or JGR employee acted as the "administrative contact" for the various domain names registered on behalf of Plaintiffs. Through the years, a succession of such employees acted as the administrative contact, beginning with Davis and culminating with JGR employee Brian Holland (Holland).

---

[2] JGR provided wireless internet service by mounting equipment on Plaintiff's radio tower. At that time, to rent space at a similar height as Plaintiffs' tower would cost as much as $700 per month.

For many years, this arrangement with Town Square's successor, JGR, its members, and Marhefka, on behalf of Plaintiffs, worked well without interruption. At no time during that period did JGR, its members, employees or anyone acting on its behalf, ever claim ownership of Plaintiffs' domain names. Rather, the domain names were owned by the business associated with each domain name.

In the summer of 2011, JGR hired Baugh. Shortly thereafter, the relations between the parties began to break down. Baugh began asserting that Plaintiffs' use of bandwidth was costing JGR a substantial amount each month. Baugh demanded significant changes in the terms of the barter arrangement to require several thousand dollars per month in fees. In December 2011, Marhefka received a bill for $7,000. When he refused to pay, Defendants retaliated by "seizing" the domain names and turning off all of Plaintiffs' websites, preventing them from making any use of the websites. In response, Marhefka, on behalf of Plaintiffs, demanded the return of the domain names and restoration of service. Defendants refused.

The withheld domain names included kuku.com. With respect to its ownership, there was some confusion as to whether the domain name was owned by MORN or CORN. Marhefka testified that kuku.com was originally associated with KUKU Radio owned by MORN. This is why MORN was the initial plaintiff in the case. After discovery in the matter, however, Marhefka learned that an early JGR administrative contact mistakenly registered kuku.com with a different station, KKDY Radio owned by CORN.

In late December 2011, Baugh and the JGR members decided to sell the kuku.com domain name. On December 20, 2011, Baugh "ordered" Holland, on pain of being fired, to transfer the domain name credentials from the current holder, (KKDY Radio), to Baugh.

5

Holland accomplished this transfer by first changing the credentials to himself, thereby making him the legal owner of the website, although Holland himself never claimed any ownership interest therein. Following that transaction, Holland again changed the ownership credentials from himself to Baugh.

Once ownership of kuku.com was in Baugh's name, Baugh arranged for, and then sold, the domain name to a Chinese buyer for $50,000 in cash. Ownership of the domain name was formally transferred by a written contract, which was admitted at trial without objection as Exhibit 1 by Plaintiffs. The sale was accomplished without any notice to Plaintiffs or Marhefka and before Marhefka could regain control of the domain name. Marhefka testified that he believed the domain name of kuku.com was worth at least $50,000. In May 2012, the initial petition for conversion was filed against Baugh and JGR. Later that month, an amended petition was filed, which added JGR members Gobel, Ramseur and Negri.

A one-day bench trial in the matter was conducted on March 3, 2017. Despite testimony that CORN, not MORN, owned kuku.com, neither party raised the issue that CORN was not a plaintiff. At the end of trial, the court granted each party 30 days to file suggestions in the matter.

On April 6, 2017, Defendants filed a "motion for judgment," asserting for the first time that the wrong party was pursuing the action. Four days later, MORN filed its motion to add a plaintiff. Thereafter, the court denied Defendants' motion, granted MORN's motion, and added CORN as a plaintiff.

The court determined that Defendants converted the domain name on December 20, 2011, when Baugh ordered Holland to transfer the domain name credentials from the

existing holder, (KKDY Radio), first to Holland and then to Baugh. The court entered judgment against Defendants, jointly and severally, for $50,000, plus interest from the date of conversion. In an initial judgment, the court entered judgment in favor of both MORN and CORN. Following Defendants' motion to amend, the court entered an amended judgment in favor of CORN only, as the owner of kuku.com. This appeal followed.

### Discussion and Decision

We will address Defendants' eight points out of order, and some in groups, for ease of analysis. Additional facts will be included below as we discuss these points.

*Point 5*
*Applicability of the Conversion Theory of Recovery*

Defendants' fifth point contends the trial court erroneously declared the law by deciding that the conversion theory of recovery applied to the facts of this case. "Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." ***Emerick v. Mut. Benefit Life Ins. Co.***, 756 S.W.2d 513, 523 (Mo. banc 1988). To prove conversion, a plaintiff must establish the following three elements: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." ***JEP Enters., Inc. v. Wehrenberg, Inc.***, 42 S.W.3d 773, 776 (Mo. App. 2001); ***Mackey v. Goslee***, 244 S.W.3d 261, 264 (Mo. App. 2008).[3]

---

[3] "The proper measure of damages in a conversion case is the reasonable market value of the property at the time of the conversion." ***S. Missouri Bank v. Fogle***, 738 S.W.2d 153, 158 (Mo. App. 1987). Further, "interest is allowed in conversion cases on the value of the converted property from the date of its conversion." ***Id***.; ***Independence Flying Service, Inc. v. Ailshire***, 409 S.W.2d 628, 632 (Mo. 1966); *see* §§ 537.520, 408.020.

Defendants' challenge to the applicability of the conversion theory is two-fold. First, Defendants argue that an internet domain name is not "a species of 'property' capable of supporting an action for its conversion." Second, Defendants argue that, "because the relations and remedies of the parties were governed entirely by contract, … to recoup uncompensated expenses of contract performance is not an 'independent tort' supporting a conversion action." We find no merit in either argument.

Defendants' first argument is a matter of first impression in Missouri. We review *de novo* as a question of law whether an internet domain name is personal property that may be converted. *See* ***In re Estate of Shuh***, 248 S.W.3d 82, 84 (Mo. App. 2008). "As a case of first impression, it is instructive to examine cases from other jurisdictions in addressing [the issue]." ***Schembre v. Mid-America Transplant Ass'n***, 135 S.W.3d 527, 531 (Mo. App. 2004).

In ***Kremen v. Cohen***, 337 F.3d 1024 (9th Cir. 2003), the Ninth Circuit United States Court of Appeals addressed the issue of whether domain names as a class are a species of property subject to conversion. *Id*. at 1029. The Ninth Circuit held that, under California law, an internet domain name was a form of intangible property that could serve as the basis for a conversion claim. *Id*. at 1030. The Ninth Circuit decided that a domain name satisfies all three criteria of property rights: a well-defined interest, capable of exclusive possession or control, and legitimately claimed to be exclusive. *Id*. The Court explained:

> Like a share of corporate stock or a plot of land, a domain name is a well-defined interest. Someone who registers a domain name decides where on the Internet those who invoke that particular name – whether by typing it into their web browsers, by following a hyperlink, or by other means – are sent. Ownership is exclusive in that the registrant alone makes that decision. Moreover, like other forms of property, domain names are valued, bought and sold, often for millions of dollars …. Finally, registrants have

8

a legitimate claim to exclusivity. Registering a domain name is like staking a claim to a plot of land at the title office. It informs others that the domain name is the registrant's and no one else's. Many registrants also invest substantial time and money to develop and promote websites that depend on their domain names. Ensuring that they reap the benefits of their investments reduces uncertainty and thus encourages investment in the first place, promoting the growth of the Internet overall.

*Id*. (citations omitted); *see also **Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.***, 880 N.W.2d 16, 23 (Minn. 2016) (following ***Kremen*** by holding that the "majority of courts that have considered the question have concluded a domain name is personal property"); *see, e.g.*, ***Porsche Cars North Am., Inc. v. Porsche.net***, 302 F.3d 248, 260 (4th Cir. 2002) (rejecting position that domain names were not property by looking to Congress' treatment of domain names as property under the Anti-cybersquatting Consumer Protection Act); ***Express Media Group, LLC v. Express Corp.***, 2007 WL 1394163, at *6 (N.D. Cal. 2007) (holding that purchaser of a domain name from an unknown third party which had wrongfully taken the domain name from its owner could be sued for conversion); ***Emke v. Compana, L.L.C.***, 2007 WL 2781661, at *5 (N.D. Tex. 2007) (applying California law to this issue, noting that to hold otherwise would encourage cybersquatters to reside and operate in states where intangible intellectual property receives little or no protection from a conversion claim).

Similar cases provide additional support for the proposition that a domain name is intangible personal property that is subject to conversion. In ***Superior Edge, Inc. v. Monsanto Co.***, 44 F.Supp.3d 890 (D. Minn. 2014), a federal district court, applying Missouri law, held that software source code was a form of intangible property subject to a conversion claim. *Id*. at 910-11. Conversion claims for intangible property in Missouri also have been upheld for engineering plans and architectural schematic drawings,

respectively. ***Colton, McMichael, Lester, Auman, Visnovske, Inc. v. Mueller***, 896 S.W.2d 741, 743 (Mo. App. 1995); ***Hastings & Chivetta Architects v. Burch***, 794 S.W.2d 294, 297 (Mo. App. 1990). We hold that an internet domain name is a form of intangible property that can serve as the basis for a conversion claim in Missouri. *See **Kremen***, 337 F.3d at 1030. Defendants' first argument fails.[4]

Defendants next contend the trial court erroneously declared the law by deciding that there was an "'independent tort' supporting a conversion action" in this case. According to Defendants, "the relations and remedies of the parties were governed entirely by contract[.]" Therefore, Defendants reason, "no action in conversion lies against a contractual domain name administrator who resorts to self-help for recoupment of losses under a contract after a refusal to pay and a failure of negotiation of new contract

---

[4] The ***Colton*** court also noted that, "where intangible rights are merged in or identified with some document, conversion may be maintained." ***Colton***, 896 S.W.2d at 743; ***Breece v. Jett***, 556 S.W.2d 696, 709 (Mo. App. 1977). We need not address the issue of whether documentation is required because the record here includes documentation identifying the domain name, in the form of the written contract of Defendants' transfer of the domain name's ownership that was admitted without objection as Exhibit 1. The trial court found that, via this document, Defendants tacitly acknowledged that a domain name is property which may be bought and sold. Whether such documentation should be required to maintain a conversion action is a proposition of questionable validity. As the Supreme Court of Arkansas recently decided:

> At issue in this case are IDM's electronically stored documents. There is simply no reasonable basis for allowing a claim for conversion of paper documents but not for their electronically stored counterparts. Thus, we conclude that, under Arkansas law, intangible property, such as electronic data, standing alone and not deemed a trade secret, can be converted if the actions of the defendant are in denial of or inconsistent with the rights of the owner or person entitled to possession.

***Integrated Direct Mktg., LLC v. May***, 495 S.W.3d 73, 76 (Ark. 2016).

10

terms." We review this issue of law *de novo*. *See Denny*, 527 S.W.3d at 925. For reasons that follow, Defendants' second argument also fails.

It is true that "Missouri has never recognized a mere breach of contract as providing the basis for tort liability." *Chrysler Fin. Co., L.L.C. v. Flynn*, 88 S.W.3d 142, 151 (Mo. App. 2002). "It is the act itself that serves as the basis of any tort liability, not the breach." *Id*. "If the act, independent of the contract, would result in tort liability, it would continue to do so even in the presence of a contract." *Id*. On the other hand, if "the act would not represent a tort, the mere breach of the contract will not create tort liability." *Id*. Defendants' reliance on two cases, discussed below, is misplaced.

*Khulusi v. Sw. Bell Yellow Pages, Inc.*, 916 S.W.2d 227 (Mo. App. 1995), is factually distinguishable. There, the parties contracted for Dr. Khulusi's ads to run in the yellow pages. Because the yellow pages' sales department had not recorded timely payment, Dr. Khulusi's ad was not placed in the appropriate circular. *Id*. at 230. On those facts, the western district of this Court held that the rights and relations of the parties were governed solely by the contract to run Dr. Khulusi's ad. *Id*. Because the duty to run the ad arose only from the contract, the omission of the ad would not have been a tort had the contractual relationship not existed. *Id*. Here, the facts favorable to the judgment established that: (1) JGR transferred the domain name from its rightful owner, KKDY Radio, to Holland and then to Baugh; and (2) it was this tortious conduct that gave rise to the conversion theory of recovery. In short, this act of JGR in transferring the domain name – independent of the contract – served as the basis of the tort liability, rather than a breach of contract. *See Chrysler Fin. Co.*, 88 S.W.3d at 151. *Khulusi* does not support Defendants' argument.

11

The same is true of ***Conwell v. Gray Loon Outdoor Mktg.***, 906 N.E.2d 805 (Ind. 2009). There, the Indiana Supreme Court held that an internet website designer would not be liable in conversion for taking a client's website offline after the client failed to pay hosting fees. ***Id***. at 814-17. Significantly, the website designer had created original content on the website and maintained the site as a service to the client. ***Id***. at 810. The Indiana Supreme Court decided, *inter alia*, that, under the Copyright Act, the client never had a property interest in the website in the first place. ***Id***. at 814-17. Because the website did not belong to the client, the client could not show ownership of the property at issue. For that reason, the client's conversion claim failed. ***Id***. at 817. Those are not the facts here. There is no claim by Defendants that they authored the original content or that they had some copyright interest therein. Instead, the favorable evidence proved that Plaintiffs owned the domain names and that all website content was managed by Plaintiffs' agents. Moreover, the act of the website designer in ***Cromwell*** was limited to taking the website offline, not transferring the domain name to an unauthorized third party, as is the case here. Therefore, ***Cromwell*** is factually distinguishable and does not support Defendants' argument.

For all these reasons, the trial court did not erroneously declare the law by deciding to apply the conversion theory of recovery in this case. Point 5 is denied.

*Points 1-4*
*Adding CORN as a Plaintiff*

Defendants' first four points challenge the trial court's decision to add CORN as a plaintiff. The following facts are relevant to these points.

12

The deposition testimony of former manager and member of JGR, Jason Hensley (Hensley), was admitted as part of Plaintiffs' evidence. Hensley was the general manager of JGR until approximately January 2011, when he left his employment and transferred his interest in JGR to Gobel, Ramseur and Negri. Hensley confirmed the parties' barter relationship and thought that JGR was getting "the better end of the deal[.]" Each party would be reimbursed for payment of out-of-pocket expenses benefitting the other party. These reimbursements included JGR's advance payment of renewal fees for the domain names. Marhefka always reimbursed JGR for those payments. Several monthly statements were admitted in evidence as Plaintiffs' Exhibits 3-6. All were addressed to Marhefka at ORN.

As previously mentioned, Marhefka originally understood that kuku.com was owned by MORN. During the litigation, he discovered that an early administrative contact of Defendants mistakenly listed KKDY Radio as the owner of kuku.com. While Marhefka confirmed that KKDY Radio was owned by CORN, he did not appreciate that CORN was not a plaintiff. It was clear during his cross-examination by defense counsel, however, that Defendants knew CORN was not a plaintiff:

Q. … Who owned kuku.com? …

A. … KKDY Radio, apparently. … [CORN] owns KKDY …

Q. But not [MORN], which is the party plaintiff of this lawsuit?

A. [B]ut, legally, it's [ORN]. I do everything as [ORN]. …

Q. Well, the plaintiff in this lawsuit is [MORN].

A. Uh-huh.

Q. And you just told me it doesn't own KKDY Radio. Another Subchapter S owns that; right?

A. No. It's – [MORN] owns KUKU. You're getting confused. KKDY is owned by [CORN].

At the end of Plaintiffs' evidence, Defendants did not raise the issue that CORN was not named as a plaintiff. It was not until 30 days after trial that Defendants filed their "motion for judgment," asserting for the first time that the wrong party was pursuing the action. MORN then filed its motion to add CORN as a plaintiff. At a hearing on the matter, Defendants argued against adding CORN as a plaintiff because: (1) the "real party in interest [was] intentionally concealed from the Court"; and (2) the five-year statute of limitations had run to pursue the action, so an action naming CORN as a plaintiff was too late. The trial court overruled Defendants' motion for judgment and granted MORN's motion to add CORN as a plaintiff. In so ruling, the court specifically found Marhefka and Hensley's testimony "to be factual recitations of the pending matter." The trial court denied Defendants' motion for judgment for the following reasons:

> Defendant alleges that because Mr. Marhefka testified at one point that KKDY Radio is owned by CORN rather than Plaintiff MORN this action should be dismissed. This was the subject of Defendants' Motion for Judgment. However, it was clear from the evidence that KKDY Radio, which was shown as the owner on the internet Web.com records of the domain name KUKU.com, was listed as owner by the Defendants themselves at the time Defendants, on behalf of Plaintiff, registered the internet domain name KUKU.com. Defendants have always billed Plaintiff or "Ozarks Radio Network," and not CORN, for renewal of the domain name registration for the website KUKU.com. This is reflected in Plaintiff's Exhibits 3-6, billing statements from Defendant JGR to Plaintiff for renewal of the domain name registration for KUKU.com.

In granting MORN's motion to add a party plaintiff, the court also made the following factual findings: (1) the request to add CORN as a plaintiff "arose from the same

14

occurrence and all of the same facts set forth in the original pleading, except the identity of the actual plaintiff in interest"; (2) the original plaintiff, MORN, had a common owner with CORN; (3) Marhefka, as the owner of both corporations, represented both corporations interchangeably in communications with Defendants regarding the domain name and internet service; (4) Marhefka represented both corporations in setting up a barter agreement with JGR and its predecessor; (5) JGR billed MORN for internet service and domain name fees; (6) MORN made some payments to JGR and its predecessor for registration or maintenance of the domain name kuku.com; (7) that "these interrelated connections [form] a sufficient 'legal or beneficial interest' to justify relation back of the amendment"; (8) Defendants suffer "no prejudice by allowing the additional party given the closely interwoven relationships of the two corporations MORN and CORN, and Defendants' knowledge and historical treatment as such"; (9) KKDY Radio was listed as the owner of kuku.com by Defendants themselves; and (10) KKDY Radio is owned by CORN, therefore CORN is "the true plaintiff with claim of ownership herein." The court entered judgment in CORN's favor.

Defendants challenge these findings in their first four points. Points 1-3 contend that the trial court "misapplied the law" by: (1) "entering judgment for nonparty CORN, because CORN was bound by submission of the cause on defendants' motion for judgment against MORN"; (2) "joining CORN as a plaintiff under Rule 52.06 after limitations ran against a conversion action, because MORN lacked standing to prosecute the claim"; and (3) "adding CORN as plaintiff under Rule 52.06, because the Rule allows joinder only in compliance with Rules 52.04, 52.05, and 55.33(a)." Point 4 recognizes that joining CORN is a discretionary ruling and contends the trial court abused its discretion by "joining

15

CORN, because the joinder was not ordered on 'just terms' as required by Rule 52.06[.]" For ease of analysis we again address some of these points out of order.

*Point 1*

Defendants' first point contends the "trial court misapplied the law in entering judgment for nonparty CORN, because CORN was bound by submission of the cause on defendants' motion for judgment against MORN[.]" According to Defendants, "the motion was submitted on a record conclusively disproving MORN's ownership of the allegedly converted domain name, compelling a judgment on the merits binding all parties in privity with MORN who could have timely joined, but failed to do so." We disagree.

According to Rule 73.01(b), Defendants' so-called "motion for judgment" was untimely. Rule 73.01(b) authorizes a motion for judgment, specifying that such a motion be brought during trial, after the plaintiff has completed presentation of plaintiff's evidence:

> After the plaintiff has completed presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief. The filing of such motion does not constitute a waiver of defendant's right to offer evidence.

*Id*. The plain wording of Rule 73.01(b) indicates that a motion for judgment is to be made at the close of plaintiff's evidence, before defendant offers evidence. *Id*.; *see, e.g.*, **Marrs v. Marrs**, 628 S.W.2d 950, 951 (Mo. App. 1982) ("effect of a motion for judgment at the close of the proponent's case is to submit the case for decision on the merits in a court tried case"). On cross-examination of Marhefka, it was apparent that Defendants' counsel was well aware that CORN owned the domain name and that MORN was listed as the only plaintiff. Defendants offer no reason for their failure to file their motion for judgment at

16

the close of Plaintiffs' evidence.  Defendants have not cited any authority that authorizes the filing of a motion for judgment under Rule 73.01(b) after the cause has been submitted to the court, when it was not raised during trial.  *See, e.g.*, **Stevens v. Cato**, 549 S.W.3d 479, 482 (Mo. App. 2017); **Berlin v. Pickett**, 221 S.W.3d 406, 409-10 (Mo. App. 2006).  Had Defendants timely filed their motion, CORN could have been added and the problem remedied at that time.

Moreover, not only did Defendants know CORN was not a plaintiff early in the case, it was Defendants who mistakenly associated the domain name with the wrong radio station – KKDY owned by CORN – in the first place.   As such, Defendants' contribution to the error and failure to timely raise the issue is invited error.  "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial."  *In re Marriage of Gardner*, 973 S.W.2d 116, 126 (Mo. App. 1998); **Bowers v. Bowers**, 543 S.W.3d 608, 615 (Mo. banc 2018).  It is axiomatic that a party may not take advantage of self-invited error or error of its own making.  **Wilson v. P.B. Patel, M.D., P.C.**, 517 S.W.3d 520, 525 (Mo. banc 2017); **Watts v. EFCO Corp.**, 583 S.W.3d 483, 489 (Mo. App. 2019).  Consequently, Defendants invited and therefore waived any challenge to the alleged error.  *See Watts*, 583 S.W.3d at 489.  Point 1 is denied.

*Point 4*

Defendants' fourth point contends the trial court abused its discretion in joining CORN "because the joinder was not ordered on 'just terms' as required by Rule 52.06[.]"  According to Defendants, "MORN was guilty of undue delay, bad faith and dilatory motive, and defendants were prejudiced thereby."  We disagree.

17

In relevant part, Rule 52.06 states that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *Id*. "Motions to amend to add or substitute a party should be freely granted when justice so requires." *Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 432 (Mo. App. 2003); *see also Union Center Redevelopment Corp. v. Leslie*, 733 S.W.2d 6, 8 (Mo. App. 1987). "The law in Missouri for nearly a century is a new action is not commenced by substituting the party having the legal right to sue instead of another party improperly named." *Union Center Redevelopment Corp.*, 733 S.W.2d at 8. "This rule is especially true where the subject matter of the suit and the issues to be tried are unchanged." *Id*.; *see Asmus*, 115 S.W.3d at 434. Further, when a defendant "is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added[.]" *Rotella v. Joseph*, 615 S.W.2d 616, 623 n.8 (Mo. App. 1987); *Asmus*, 115 S.W.3d at 434; *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 114-15 (Mo. App. 2006).

In support of Defendants' argument that the joinder of CORN was not on "just terms," Defendants rely solely on their own weighing of the evidence and conclusions they believe the trial court should have reached. Defendants' argument ignores our standard of review. We are required to defer to the trial court regarding credibility determinations and assigning weight to witness testimony. *Metzger*, 496 S.W.3d at 549. Here, the trial court found Marhefka credible, and obviously did not believe that "MORN was guilty of undue delay, bad faith and dilatory motive" as Defendants claim. Further, as the trial court found, Defendants suffered no prejudice by adding CORN, "given the closely interwoven

18

relationships of the two corporations MORN and CORN, and Defendants' knowledge and historical treatment as such." Moreover, the owner of kuku.com – KKDY Radio owned by CORN – was known and so listed by Defendants themselves. Because Defendants have failed to show the court lacked careful consideration in deciding the issue, we find no abuse of discretion in joining CORN as a plaintiff. Point 4 is denied.

*Point 2*

Defendants' second point contends the "trial court misapplied the law in joining CORN as a plaintiff under Rule 52.06 after limitations ran against a conversion action, because MORN lacked standing to prosecute the claim from the inception[.]"[5] According to Defendants, "MORN held no property right in domain name 'kuku.com' protectable by a suit for conversion." We disagree.

A similar argument concerning a new plaintiff added after a limitation period expired was addressed in *Asmus*, 115 S.W.3d at 434-35. In determining the propriety of adding a new party plaintiff, the Court in *Asmus* explained that:

> [a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitation defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading.

---

[5] Defendants rely on the limitation period set forth in § 516.120(4), which requires that "[a]n action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated" must be commenced within five years. *Id*. Here, the trial court found the conversion occurred on December 20, 2011. Plaintiffs filed their initial petition in May 2012, well within the five-year period, which expired in December 2016. After the March 2017 trial in the matter, the motion to add CORN was filed in April 2017.

*Id*. at 434 (citation omitted). The **Asmus** court rejected defendants' claim they were prejudiced because they lost the benefit of the statute of limitations:

> "[W]here a plaintiff pleads a specific set of facts in trying to enforce a claim within the statutory period, and defendant had notice of such a claim from the date of its filing, the reasons for statute of limitations cease to exist." [*Estate of Jones v. Planters Grain & Seed Co.,* 723 S.W.2d 91, 92 (Mo. App. 1987)]. The court found that the defendant suffered no prejudice as a result of the substitution, "as it knew from the beginning what the claim was, and had the opportunity to timely investigate it and prepare its defenses." *Id*. The court explained: "It is clear from an unbroken line of Missouri decisions that if a suit is brought by one who has a *beneficial interest* in the subject matter," the substitution of the proper plaintiff will relate back to the filing of the original action and the action will not be barred by the statute of limitations. *Id*. at 92, n.3[.]

**Asmus**, 115 S.W.3d at 435 (emphasis in original). The Court noted there that plaintiff Asmus, like the named plaintiff in **Estate of Jones**, "had a beneficial interest in the subject matter of the lawsuit." **Asmus**, 115 S.W.3d at 435. The amendment to add the new plaintiff "should therefore relate back to the date of the original filing so as to avoid the bar of the statute of limitations." **Id**.

We reach the same conclusion here. Defendants suffered no prejudice as a result of joining CORN since they knew from the beginning what the claim was, and had ample opportunity to timely investigate and prepare their defenses. *See* **id**. Further, the trial court relied on **Asmus** and specifically found that: (1) MORN made some payments to JGR and its predecessor for registration or maintenance of the domain name kuku.com; and (2) the interrelated connections between MORN and CORN form a sufficient legal or beneficial interest to justify relation back of the amendment. Therefore, the statute of limitations is no bar to the claim. *See* **Asmus**, 115 S.W.3d at 435; *see also* **Fireman's Fund Ins. Co. v. Panco Forwarding, Inc.**, 739 S.W.2d 543, 545 (Mo. banc 1987) (statute of limitations is

20

no bar to the claim where the proper defendants had notice of the claim and failed to challenge plaintiff's legal capacity to sue under Rule 55.27(g)(1)).  Accordingly, the trial court did not misapply the law in joining CORN as a plaintiff under Rule 52.06 after the limitation ran against a conversion action.[6]  Point 2 is denied.

*Point 3*

Defendants' third point contends the trial court "misapplied the law in adding CORN as plaintiff under Rule 52.06 because the Rule allows joinder only in compliance with Rules 52.04, 52.05, and 55.33(a)" concerning joinder of necessary parties, permissive joinder, and amended pleadings, respectively.  According to Defendants:  (1) MORN's petition failed to disclose CORN's interest as required by Rule 52.04(c); (2) MORN failed to request substitution of CORN; (3) MORN offered no proposed amended pleading allowing relation back; and (4) MORN's motion was not joined by CORN.  We find no merit in this point.

 "Rule 52.06 provides the trial court with discretion to implement Rules 52.04 and 52.05, within the context of a particular lawsuit, 'on such terms as are just.'"  ***State ex rel. Williams v. Mauer***, 722 S.W.2d 296, 301 (Mo. banc 1986); Rule 52.06.  Similarly, "Rule 55.33(a) provides for the amendment of pleadings by leave of the court … freely given when justice so requires."  ***Thompson***, 207 S.W.3d at 114 (internal quotation marks omitted).  Such decision to allow or disallow an amended pleading is within the sound discretion of the trial court.  ***Id***.

---

[6]  Because CORN was properly added as a plaintiff, and judgment was entered in favor of CORN, we need not address Defendants' additional argument under this point that MORN lacked standing.

Here, Defendants' point, as we understand it, argues that the trial court "misapplied the law" in determining that Rule 52.06 applied at all based on alleged deficiencies in the pleadings. A closer reading of their argument, however, shows that they are essentially arguing that the court erred in applying Rule 52.06 to the facts in this case, reviewed not as a misapplication of law, but for an abuse of discretion. *Webster*, 744 S.W.2d at 804. It is clear from the court's handling of the matter, that the court correctly considered not only the potential applicable rules, but also the proper context for their application. For all the reasons stated in our disposition of Point 4, the trial court did not abuse its discretion in joining CORN as a plaintiff under Rule 52.06. Point 3 is denied.

*Points 6-8*
*Imposing Personal Liability on JGR Members*

Defendants' last three points challenge the court's decision to impose personal liability upon the individual members of JGR. When a corporation or an LLC is used for an improper purpose and to perpetuate injustice by which it avoids its legal obligations, "equity will step in, pierce the corporate veil and grant appropriate relief." *Pasta House Co. v. Miller*, 691 S.W.2d 460, 462 (Mo. App. 1985); *Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo. App. 2014). "Put succinctly, if a member of an LLC has complete control of the company and uses that control to commit a wrongdoing that proximately causes an injury, then the individual member will be held liable for the LLC's debts." *State ex rel. Family Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 593 (Mo. App. 2017). For a court to disregard the business entity or pierce the corporate veil, a plaintiff must demonstrate that the entity met the requirements of the following three-pronged test:

22

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. App. 2014) (citation omitted); *see also Hammett*, 438 S.W.3d at 462; *Steak'm Take'm LLC*, 524 S.W.3d at 593. In addition, "a corporate officer may be held individually liable for tortious corporate conduct if he or she had actual or constructive knowledge of, and participated in, an actionable wrong." *State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004) (internal quotation marks and citation omitted); *Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo App. 1997). The following facts are relevant to these points.

After the amended petition for conversion was filed adding JGR members Gobel, Ramseur and Negri, they submitted their answer to the amended petition. Therein, the members admitted that they "were aware of the use of the domain name kuku.com was being transferred" and "were aware that the proceeds of the transfer of the domain name kuku.com were being retained by the company to pay certain debts and obligations." At trial, Defendants' witnesses included two of the three JGR members: Gobel and Ramseur.

In the judgment, the trial court made extensive findings to support its decision to disregard the business entity of JGR and impose personal liability on its individual

23

members. With respect to control, the court found that "[i]t is clear to this Court that the individual Defendants Gobel, Ramseur, and Negri exercised complete control of [the] transaction, the sale of the domain name KUKU.com to the third party buyer." The court also found that: (1) the testimony "establishes that individual Defendants Gobel, Ramseur and Negri had actual or constructive knowledge of the conversion of Plaintiffs' domain name"; and (2) "they individually participated in or directed the conduct." The court therefore held each member "individually and personally, jointly and severally along with Defendants JGR Technologies, LLC and Luke Baugh, liable for damages to the Plaintiffs."

Defendants contend that the trial court "misapplied the law" by: "concluding that the three LLC Members of [JGR] exercised 'control' necessary to impose personal liability" (Point 6); "concluding that the domain name sale was a species of 'fraud or wrong' warranting imposition of personal liability upon the LLC members" (Point 7); and "entering judgment against the individual LLC members, because there is no finding or evidence to support a finding that the individual members directed the commission of a tort" (Point 8). None of these points have merit.

Although each point asserts the trial court "misapplied the law" and seeks *de novo* review, Defendants' arguments arise from disputed factual issues and are based upon Defendants' self-serving interpretation of the facts and the inferences to be drawn therefrom. Such arguments actually challenge whether the judgment is supported by substantial evidence or against the weight of the evidence. By not acknowledging and briefing these points in that fashion, Defendants' arguments have no analytical or persuasive value because they have ignored the requirements of ***Houston v. Crider***, 317 S.W.3d 178, 186-87 (Mo. App. 2010). The court's factual findings to support the

imposition of personal liability on JGR members Gobel, Ramseur and Negri are presumed correct, and Defendants have failed to meet their burden of demonstrating why these factual findings are erroneous. Therefore, Points 6, 7, and 8 are denied. *See **Denny***, 527 S.W.3d at 924-25.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR